Vivien E. Sullivan, Executrix of the Last Will and Testament of Edward J. Sullivan, Deceased, Plaintiff-Appellee, v. Pearl Fawver and Ira Fawver, Defendants-Appellants.

Gen. No. 64–105.

Second District.

April 23, 1965.

Bert P. Snow, of Freeport, for appellants.

Ascher and Ellis, of Freeport, for appellee.

ABRAHAMSON, P. J.
This appeal is taken from judgments in favor of the executor of the Last Will and Testament of a deceased attorney against a man and wife for attorney's fees. The case was tried before a jury and the judgments were entered on the jury's verdicts.

Attorney Edward J. Sullivan, hereinafter called Sullivan, was a long-time practitioner in Stephenson County and had for many years been the family lawyer for Ira and Pearl Fawver, the appellants herein, representing them in numerous small transactions. On February 16, 1961, the Fawvers were involved in a serious automobile accident in Winnebago County and were both hospitalized. Apparently, there was little doubt that the driver of the other automobile was legally at fault. Ira Fawver was released from the hospital first and was contacted about April 5, 1961, at home by a representative of the insurance carrier insuring the driver of the other car. On the following day, Ira and his niece visited the office of Sullivan and informed him of the accident, Pearl Fawver was still in the hospital. A letter, dated April 6, 1961, was sent by Sullivan to the insurance carrier stating, in part, "This is to advise you that I have been retained by Mr. and Mrs. Ira D. Fawver of this City for the purpose of representing them in connection with the automobile accident involving a car driven by Mr. Harold Bradley of Rockford, Illinois."

Sullivan's secretary testified that the letter was dictated in the presence of Ira and his niece, but the niece denies this and Ira could not "recollect" it. Ira did direct the hospital to forward the bills to Sullivan and referred phone calls from doctors to his office. The doctor's reports and bills were assembled by Sullivan and forwarded to the insurance carrier whose

40

adjustor, Charles S. Adams, Jr., entered into direct settlement negotiations with Sullivan.

During the period involved in this controversy, Sullivan was apparently dying of cancer. He had undergone operations in 1957 and 1960 and was incapable of speaking above a harsh whisper.

In late June 1961, Adams offered $23,000 in full settlement of the claims of Pearl Fawver, the claim based in part, on the medical bills forwarded by Sullivan. The following day Sullivan phoned Adams and informed him that there was an additional bill in the amount of $7,200, and, on that basis, new discussions took place at Sullivan's office in late July. Both Sullivan and Adams made notes as they talked showing that Pearl Fawver's approximate medical bills were $15,000; $18,000 would be considered for her pain and suffering; and $8,000 were noted as attorney's fees. Adams testified that in negotiating settlements of this kind, he customarily considered the plaintiff's attorneys fees of 25%, and included them in his offers of settlement.

Following this conference, Sullivan and Adams visited the Fawvers and Sullivan recommended to Pearl Fawver who was at home, that she accept $41,000 offered in full settlement. The Fawvers expressed their belief that the offer was far too small and the conference ended.

Sullivan returned alone on several occasions to discuss the case with the Fawvers and kept in contact with Adams. In late 1961, Sullivan went into a hospital, and with his approval, Adams contacted the Fawvers directly in an unsuccessful effort to settle it before the end of the year. Sullivan returned from the hospital and advised Adams that he would attempt to obtain a sensible counter-offer from the Fawvers after the first of the year. On February 4, 1962, Sullivan died.

On March 5, 1962, the Fawvers entered into a written agreement with an attorney, Bert Snow, providing for a contingent fee of 33⅓% of any amount recovered in excess of $40,000 in regard to their claims. The contract provided that the Fawvers would be responsible for any attorney's fees due the estate of Sullivan. On May 9, 1962, the Fawvers received $62,316.23 in full settlement of their claims.

Subsequently, the Fawvers received statements from Sullivan's widow, as executor under his Last Will, in the amount of $10,250 for Pearl, and $594.34 for Ira for legal services rendered during his lifetime. These figures represent 25% of the offers from the insurance carrier at the date of Sullivan's death. The Fawvers refused to pay these amounts, or any amounts at all, and this suit resulted.

■ The parties are in agreement that there was no express contract relating to the employment of Sullivan or his compensation. While the appellants denied in their pleadings, and during the trial, that there was in fact any agreement that Sullivan was to represent them in this matter, at all, this position is absurd and not urged on appeal. Where there is no express agreement as to the question of fees between attorney and client, it is universally recognized that there is an implied contract that the attorney be entitled to reasonable compensation measured by the value of his services. Crocker v. Boening, 247 Ill App 466.

■ Appellants emphasize that an agreement for a contingent fee can never be implied, but must be a matter expressly contracted for by the attorney and the client. While there does not appear to be any Illinois cases to support their position on this point, we do not quarrel with it as a valid statement of the law. However, in the instant case it has no bearing since Sullivan's estate does not seek to recover on an

implied contract for a contingent fee, but for the reasonable value of his services to the time of his death.

 In determining what the reasonable value of an attorney's services are, in the absence of an express contract, it is proper for the judge or jury to consider the usual and customary fees for similar services in the same community. Louisville, N. A. & C. R. Co. v. Wallace, 136 Ill 87, 26 NE 493. Nathan v. Brand, 167 Ill 607, 47 NE 771. Attorneys may testify as expert witnesses as to the fees usually and customarily charged for like services within the community, and the judge or jury may properly consider their testimony in arriving at their determination. Louisville, N. A. & C. R. Co. v. Wallace, 136 Ill 87, 26 NE 493. Maneaty v. Steele, 112 Ill App 19.

In our case, the plaintiff called four trial attorneys who practice in Stephenson County, all with wide experience and distinguished attainments. Each testified that, in their opinion, the customary and usual fee within their community for representing a client in a personal injury action would be 25% of any recovery before filing a lawsuit, and 33⅓% thereafter, irrespective of the existence of an express contract to that effect. Each of the attorneys stated that in their opinion such a charge would be fair and reasonable.

Appellants offered no evidence, expert or otherwise, as to the usual and customary charges for like services in the community. They do protest that a determination of the fair and reasonable value of an attorney's services on a quantum meruit theory cannot include any percentage calculation of the eventual recovery and cite as their main support a New York case, Martucci v. Brooklyn Children's Aid Society, 284 NY 408, 31 NE2d 506. The Martucci case overruled an allowance by the trial court of an attorney's fee equal to 12½% of the eventual recovery where

there was no express contract. However, in that case the attorney had been discharged long before the ultimate outcome and the court's objection was that the percentage was based on the final recovery, and not on the use of the percentage calculation as such.

As we have said, the usual and customary practice in the community is one factor in determining the fairness and reasonableness of attorney's fees. There is no compelling reason why the usual and customary charges cannot be expressed in percentage calculations, if such is the fact. Rankin County v. Wallace, 230 Miss 413, 92 So2d 661.

█ In the absence of any other evidence, testimony that establishes the usual and customary charges for legal services within a community, which does not appear oppressive or exorbitant to the court, will be considered as fair and reasonable. Nathan v. Brand, 67 Ill App 540.

█ In the instant case, attorney's fees in the total amount of $8,500 are high, but not unreasonably so. The amount offered to the Fawvers, through Sullivan, in excess of $43,000, was substantial. The offer was made with the realization that attorney's fees would be deducted from the amount eventually paid the Fawvers. While the amount of work involved does not seem overwhelming, such is typical in cases of this nature. We do not feel the amounts awarded by the jury are oppressive or manifestly unfair and will not substitute our judgment for theirs.

█ █ Appellants also urge that because of the conduct of Sullivan, he should not have been entitled to any fee whatsoever. They assert that he was negligent and incompetent in his handling of the case, and, knowing of his own imminent death, pressured his client to make a premature and unwise settlement. The record does not support these conclusions. Sullivan did as is normally done in cases of this nature.

44

He contacted the insurance company; collected the bills; interviewed the doctors involved as to the injuries and recovery of his clients; and obtained a reasonable first offer towards settlement. While he suggested to his clients that they accept an offer substantially less than that eventually agreed upon, that does not in itself establish his incompetence. All parties agreed that arriving at a settlement figure is an extremely inexact procedure. The record does not disclose that he subjected his clients to any undue pressure to accept, nor does the fact of his malignancy seem to justify the conclusion that he was anxious to settle. regardless of the interest of his clients. The jury obviously did not feel he was negligent or incompetent, and, in harmony with the long-standing rule that a reviewing court will not disturb the finding of a jury unless it is against the manifest weight of the evidence, we will not interfere with their verdict. Allen v. Colaw, 27 Ill App2d 304, 169 NE2d 670; Stone v. Guthrie, 14 Ill App2d 137, 144 NE2d 165.

 Appellants also raise some evidentiary objections which they contend are of sufficient gravity to justify a reversal in themselves. Specifically, they urge that it was error to admit the written contract between the Fawvers and Bert Snow into evidence when its admission was irrelevant and prejudicial. However, the record does not disclose that this objection was specifically raised during the trial. Therefore, we disregard this point under the general rule that an appellate court will not consider the possibility of error unless the matter has been appropriately brought to the notice of the trial court by timely objection. Kunde v. Prentice, 329 Ill 82, 160 NE 193. They further maintain that the trial court was in error in refusing to allow testimony explaining the written contract, apparently on the basis of the parol evidence rule. While it is true that the rule is gen-

erally available only when the contract or other writing is in issue between the parties to it, we do not think the exclusion in this case amounted to reversible error.

Appellants claim that the letter written by Sullivan to the insurance carrier, quoted above, and his notes during his settlement discussions with Adams should have been excluded as self-serving statements. Appellees maintain that it was properly admitted as part of the res gestae and cite the increasingly liberal use of that doctrine. We have doubts whether these documents were in fact admissable. However, since all of the facts involved in them were established by convincing and proper evidence from other sources, we do not feel their admission was prejudicial or amounted to reversible error. Adams, the insurance adjuster, kept almost identical notes of the discussions and had received the letters and properly testified as to both. Error in the admission of evidence is harmless if other competent evidence is introduced to the same effect. Jaffe v. Chicago Warehouse Lumber Co., 4 Ill App2d 415, 124 NE2d 618.

Lastly, appellants complain that they were not allowed to impeach one of the expert witnesses of appellee. The expert had testified that he hadn't discussed anything but contingent fees with prospective clients with personal injury claims for "over twenty years." His former secretary testified for appellants but was not permitted to relate that the attorney had regularly discussed alternate methods of payment with such clients up to the time when she left his employ in 1956. We do not consider that this matter was material to the issues of the case and the exclusion of the so-called impeachment was proper. The testimony of a witness as to a collateral or immaterial matter is not subject to impeachment by proof of his prior contradictory statements. People v. Pfandschmidt, 262 Ill

46

411, 104 NE 804; Wheeler v. City of Le Roy, 296 Ill 579, 130 NE 330.

For the reasons stated, the judgments of the Circuit Court of Stephenson County are affirmed.

Judgment affirmed.

DAVIS and MORAN, JJ., concur.