Harrell Crabb, Plaintiff, v. Robert R. Anderson Co., an Illinois Corporation, and Hunter Construction Company, Inc., Defendants.

Milroy R. Blowitz, Petitioner-Appellant, v. Robert J. Heilgeist, Respondent-Appellee.

Gen. No. 53,066.

First District.

December 5, 1969.

Rehearing denied January 14, 1970.

Harold A. Liebenson and Edward G. Raszus, of Chicago (Harold A. Liebenson and Edward G. Raszus, of counsel), for appellant.

Robert J. Heilgeist, of Chicago (Sidney Z. Karasik and Ellis B. Rosenzweig, of counsel), for appellee.

GOLDENHERSH, P. J.

Petitioner, Milroy R. Blowitz, appeals from the order of the Circuit Court of Cook County awarding respondent,

Robert J. Heilgeist, an attorney's lien on certain funds presently on deposit with the Clerk of the Circuit Court of Cook County, and ordering the Clerk to pay Heilgeist the sum of $5,016.80 in satisfaction of the lien.

This proceeding arises from an action based on the Structural Work Act in which plaintiff, Harrell Crabb, was awarded damages in the amount of $50,000. This court affirmed the judgment (Crabb v. Robert R. Anderson Co., 87 Ill App2d 291, 232 NE2d 44).

Blowitz filed a petition recounting the filing of Crabb's action, the judgment, its affirmance on appeal, that Heilgeist "caused to be served upon the attorneys for the defendant a Notice of Attorneys' Lien," the judgment debtor had tendered payment of the judgment but Blowitz could not accept it as tendered, and asked a hearing be held to adjudicate Heilgeist's claim of lien.

Heilgeist filed a petition alleging matters which will be discussed to the extent necessary, and claiming a lien in the amount of one-third (⅓) of the fee payable from Crabb's recovery.

Heilgeist, Blowitz and Crabb testified, and it appears from the testimony that Crabb employed the law firm of Ozmon & Blowitz to represent him in a claim for personal injuries; although Ozmon was the lawyer with whom he spoke, when the firm was dissolved, the file remained with Blowitz. Heilgeist tried the case, resulting in the $50,000 verdict and judgment.

Heilgeist testified his arrangement with Blowitz was that he was to be paid $200 per week and one-third (⅓) of the fee in any case he tried. There were other matters covered in their agreement and several modifications, but these are not material to the issue here.

Blowitz testified Heilgeist was to be paid $200 per week, and at the time the Crabb case was tried, there was no agreement for any additional payment.

Heilgeist testified that when Crabb, whose home was in Texas, came to Chicago shortly before the trial, he came to the offices occupied by Blowitz and Heilgeist, where Heilgeist spoke with him. He wanted to know who Heilgeist was, and told him he had retained Mr. Ozmon and not Blowitz. "I told him that Mr. Ozmon severed his relationship with Mr. Blowitz, and at that time he assented to remain with us to handle his case. Mr. Crabb inquired of me what the fee was, and he inquired of me how much he would be paid. I informed him that I was the one who was detailed to handle the case, that my fee would not be increased over ⅓, that my remuneration would come from the settlement. On the 2nd or 3rd day of trial Mr. Crabb came to me in the courtroom and said to me that he hoped that I would be paid for my time, and I told him not to be concerned, and went over the fact that as the trial attorney I was to receive ⅓ of the proceeds of any judgment or settlement in the case."

Mr. Crabb denied there was such a conversation with Heilgeist, stated he originally retained Blowitz & Ozmon, in their office, and did not look at the form to see what the firm name was. He agreed to pay them one-third (⅓) for handling his case.

Although Blowitz's petition refers thereto, and Heilgeist identified a Notice of Attorney's Lien as an exhibit, it does not appear of record. The contract of employment between Crabb and whomever he originally employed is not included in the record.

The court found the arrangement between Heilgeist and Blowitz was that Heilgeist was to receive "one-third (⅓) of the one-third (⅓) that was payable under the retainer agreement." The court found that Crabb, "having signed an agreement in blank, I think that thereby he agrees that whatever arrangement may have been

made between Mr. Ozmon and Mr. Blowitz and subsequently by Mr. Blowitz alone would automatically transfer whatever rights may have been transferred to the trial attorney in the case.

"I think this trial attorney, by reason of his arrangement and agreement with Mr. Blowitz, did have some type of oral understanding with Mr. Blowitz. And by reason of his actual handling of the trial of the case throughout the whole proceedings, it would seem to me that he would be entitled to an attorney's lien for the amount I have indicated. This is the finding of the Court."

Blowitz contends that in the absence of a contractual relationship between Heilgeist and Crabb, Heilgeist does not have a statutory attorney's lien. Heilgeist's contention is threefold—in his brief he contends he has a valid statutory lien on the judgment rendered in favor of Crabb, and has "valid Lien rights" on Blowitz's one-third interest in the judgment. In support of the latter contention Heilgeist argues the facts show an attorney-client relationship between Heilgeist and Blowitz. On oral argument Heilgeist argues that by employing Heilgeist to try the case, Blowitz impliedly assigned to him the attorney's lien on his one-third of the recovery.

 In Unger v. Checker Taxi Co., 30 Ill App2d 238, 174 NE2d 219, the Appellate Court said at page 241,

> "The legislative purpose of the attorney's lien act is to assist attorneys in the collection of their attorney's fees. Brazil v. City of Chicago, 315 Ill App 436, 43 NE2d 212. This statute was unknown to the common law and must be strictly followed. De Parcq v. Gardner, 336 Ill App 144, 83 NE2d 32. It has been said that no rule of law is better settled than that liens can be created only by agreement

or by some fixed rule of law, but not by the courts. Deitchman v. Korach, 330 Ill App 365, 71 NE2d 367. A lienor who seeks to enforce a statutory lien must comply with any statutory requirement with respect to enforcement of such a lien. Cazalet v. Cazalet, 322 Ill App 105, 54 NE2d 61."

The pertinent portion of the statute creating the lien (Chapter 13, § 14, Ill Rev Stats 1967), provides:

"Attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages, which may be placed in their hands by their clients for suit or agreement, for a reasonable fee, for the services of collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such attorneys rendered or to be rendered for their clients on account of such suits, claims, demands or causes of action."

Appellee argues that the trial court found there was an attorney-client relationship between Heilgeist and Crabb and the finding should not be disturbed unless it is manifestly against the weight of the evidence. We find no such finding in the record. The trial court specifically avoided making a finding with respect to whether Heilgeist and Crabb had ever discussed fees, there is no finding of fact with respect to an agreement between Heilgeist and Crabb, and the lien was awarded on the basis of the arrangement between Heilgeist and Blowitz for the reason set forth in the portion of the findings hereinabove quoted.

██ Applying the rule that the statute must be strictly construed, we hold that the evidence fails to

show that Crabb placed any claim or cause of action in the hands of Heilgeist, and absent this element, essential to the creation of a valid statutory lien, no lien can be awarded.

■ We next consider Heilgeist's contention that the facts show an attorney-client relationship with Blowitz. The record does not support the contention, but assuming, arguendo, the relationship exists, the lien fails for the reason that the notice purporting to create the lien apparently asserts a lien against the recovery of Crabb, not that of Blowitz. Berkemeier v. Dormuralt Motor Sales, 263 Ill App 211, 218.

■ We have considered the contention that there was an implied assignment of a portion of Blowitz's lien. In the absence of authority to support the argument, we hold there was no assignment which could create a statutory lien in favor of Heilgeist.

We are not here concerned with the question of whether Blowitz owes Heilgeist one-third of the Crabb fee or any other sum, nor is what we have said to be construed as expression of an opinion as to the merits of the respective contentions of the parties. The sole issue presented is whether Heilgeist has a statutory lien on the funds presently in the hands of the Circuit Court. For the reasons stated we hold there is no lien, and the order of the Circuit Court of Cook County is reversed.

Order reversed.

MORAN and EBERSPACHER, JJ., concur.