THE PEOPLE *ex rel.* ILLINOIS DEPARTMENT OF HUMAN RIGHTS, Plaintiff-Appellee, *v.* ARLINGTON PARK RACE TRACK CORPORATION *et al.*, Defendants-Appellants.

First District (5th Division)   No. 83—1174

Opinion filed March 2, 1984.

LeMoine D. Stitt, of Stitt, Moore & Lennon, of Rolling Meadows, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Kathryn A. Spalding, Assistant Attorney General, of counsel), for appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

Defendants appeal from an order permanently enjoining them from implementing a policy of prohibiting children under the age of 14 from residing in the backstretch area of Arlington Park Race Track, in violation of section 3—104(A) of the Illinois Human Rights Act (Ill. Rev. Stat. 1981, ch. 68, par. 3—104(A)). They contend that (1) section 3—104(A) is inapplicable under the facts of this case; and (2) the policy in question is rationally related to legitimate health, safety, and welfare considerations.

Defendant Arlington Park Race Track Corporation (the Track) is licensed by the Illinois Racing Board to operate Arlington Park Race Track. During its five-month race meeting, generally held from May through September each year, it has traditionally provided living facilities for certain employees of trainers who have been assigned stalls for horses accepted for racing. Currently, the Track owns nine facilities (hereinafter dormitories) in an area commonly known as the backstretch, providing over 600 rooms ranging in size from 80 to 206 square feet, with the larger rooms being designated for double occupancy and the smaller for single occupancy. Some of the rooms have individual washroom and shower facilities, but the majority of them are serviced by communal facilities, usually located in the same building. None of the rooms are equipped for cooking, which is prohibited under both Track rules and Illinois Racing Board rules because of the proximity of the dormitories to the stabling area. Nevertheless, a number of occupants, both those with children and those without, frequently breach those rules by using hot plates, and it appears that the Track has taken no steps to stop these violations.

Rooms in the dormitories are allocated to trainers on the basis of one space for each 2.5 horses accepted for racing. The trainers in turn assign the spaces to hot walkers, exercise persons, and grooms employed by them to care for the horses. A $75 refundable damage deposit is paid by the trainer for each space; no further charge is made to the trainer, and the trainers do not charge rent to their employees, who are among the lowest-paid workers in the industry. The employees may occupy the rooms so long as they are employed by a trainer who has horses stabled at the track, that trainer continues to give permission for such occupancy, and the employee is licensed by the Illinois Racing Board and observes its rules.

The Track also maintains 16 two-bedroom trailers in an area removed from the backstretch, ostensibly for rental to those employees who are accompanied by their families. The Track charges $300 per month for the rental units, but they are rented only during the race meeting, and the Track does not recover its costs through the rental charge.

For a number of years, some employees have brought their spouses and/or children to live with them in the dormitories, allegedly because either the cost of other housing was prohibitive or no space was available in the rental area maintained by the Track or in nearby communities. While exact figures apparently are not available, it seems that an average of 20 to 30 families live at the backstretch during each race meeting, and it is estimated that 30 to 40 children, the majority of whom are six years old or younger, are involved. The Track has been aware of the presence of these children since the early 1970's without taking action to exclude them. However, in April 1982, the Track notified trainers that no children would be permitted to reside at the backstretch during the 1982 race meeting.

On May 6, 1982, several employees affected by that policy filed charges with the Illinois Department of Human Rights (the Department), alleging violation of section 3—104(A) of the Illinois Human Rights Act (the Act), which provides:

"It is a civil rights violation for the owner or agent of any housing accommodation to:

(A) Require, as a condition precedent to the rental of a housing accommodation, that the prospective tenant shall not have, at the time the application for rental is made, one or more children under the age of 14 years residing in his or her family ***." (Ill. Rev. Stat. 1981, ch. 68, par. 3—104(A).)

Shortly thereafter, the Department filed the instant action pursuant to section 7—104 of the Act, which provides in pertinent part:

"(1) At any time after a charge is filed, the Department may petition the appropriate court for temporary relief, pending final determination of the proceedings under this Act ***.

*  *  *

(3) When the petition is based upon a civil rights violation as defined in Article 3 of this Act, the relief or restraining order entered by the court shall not exceed 5 days unless:

(a) A longer period is agreed to by the respondent, or

(b) The court finds that there is substantial evidence to demonstrate that the respondent has engaged in unlawful discrimination." (Ill. Rev. Stat. 1981, ch. 68, par. 7—104(A).)

However, in its prayer for relief, the Department asked the court to grant a permanent injunction as well as a temporary restraining order and a preliminary injunction. A temporary restraining order was entered on May 14, 1982. No appeal was taken therefrom, and the parties subsequently agreed that the order should remain in effect until the trial court reached a final determination on the Department's request for a permanent injunction.

Defendants admitted in their answer that their policy is to prohibit children from living at the backstretch, but raised as affirmative defenses that section 3—104(A) was inapplicable to the dormitories because they are not "housing accommodations" as defined in section 3—101(C) of the Act (Ill. Rev. Stat. 1981, ch. 68, par. 3—101(C)) and are not rented by the employees; that its action was required both by the rules of the Illinois Racing Board and by village ordinances; and that it provided housing for families on a subsidized rental basis. After extensive hearings on these defenses, the trial court entered its final order permanently enjoining implementation of any policy prohibiting children under the age of 14 from residing at the backstretch on May 20, 1983 (the May 20 order), and the Track filed the instant appeal. The trial court supplemented that order with a written memorandum containing extensive findings of fact and conclusions of law on October 7, 1983 (the memorandum opinion), shortly after the Track filed its initial brief in this appeal.

OPINION

Prior to reaching the merits of this action, some further explanation is necessary regarding pertinent matters which have developed since the filing of this appeal from the May 20 order. Several months after that date, the parties realized that the trial court did not have the power to enter a permanent injunction. Section 8—111(D) of the Act states that "[e]xcept as otherwise provided by law, no court of

this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." (Ill. Rev. Stat. 1981, ch. 68, par. 8—111(D).) Thus, under the Act, the circuit court may only grant temporary relief during the pendency of administrative proceedings before the Illinois Department of Human Rights and the Illinois Human Rights Commission (Ill. Rev. Stat. 1981, ch. 68, par. 7—104), or review an order of the Commission in accordance with the Administrative Review Act (Ill. Rev. Stat. 1981, ch. 68, par. 8—111(A)). Since the complaint issued by the Department (apparently issued after the trial court's ruling and the parties' belated discovery that the order was improper) is still pending before the Commission, the court had power to act only for the purpose of granting temporary relief pursuant to section 7—104. In the instant case, such relief could be granted only for a maximum five-day period unless the Track agreed to an extension thereof, or the court made a finding that there was substantial evidence of a civil rights violation; in effect, unless the court entered a preliminary injunction. In the instant case, the Track elected to consent to continuation of the temporary retraining order pending a final determination on the merits, and thus no preliminary injunction was entered.

■ It is settled that even if a court is one of general jurisdiction, when its power to act in a particular matter is controlled by statute, the court is governed by the rules of limited jurisdiction. (*Brown v. VanKeuren* (1930), 340 Ill. 118, 172 N.E. 1.) Subject matter jurisdiction includes not only the power to hear and determine a class of cases (*Kemling v. Country Mutual Insurance Co.* (1982), 107 Ill. App. 3d 516, 437 N.E.2d 1253), but the power to grant the particular relief requested (*J. L. Simmons Co. v. Capital Development Board* (1981), 98 Ill. App. 3d 445, 424 N.E.2d 821). Defects in subject matter jurisdiction cannot be waived (*Volkmar v. State Farm Mutual Automobile Insurance Co.* (1982), 104 Ill. App. 3d 149, 432 N.E.2d 1149), nor can such jurisdiction be conferred on the court by the acquiescence or the stipulation of the parties (*Talandis Construction Corp. v. Illinois Building Authority* (1978), 60 Ill. App. 3d 715, 377 N.E.2d 237). Thus, it was clear to the parties that, on appeal, it would be necessary for us to vacate the May 20 order, since the trial court did not have the power to grant a permanent injunction.

We hasten to point out that the trial court did precisely what the parties requested: it considered the merits of this action and entered a permanent injunction. It had every reason to expect that the Department, which was created by the Act and should be most familiar with the procedures thereunder, would not request improper relief, or

that the Track, which obviously would be profoundly affected by an adverse ruling, would raise any questions as to the propriety of the relief requested. Nevertheless, the fact remains that the permanent injunction granted was void for lack of power in the court to order it, and by the time this defect was brought to the trial court's attention, sometime in mid-October 1983, it had long since been deprived of jurisdiction to modify or amend that order because a notice of appeal had been filed. See *Montgomery Ward & Co. v. Wetzel* (1981), 98 Ill. App. 3d 243, 423 N.E.2d 1170; *County of Cook v. Priester* (1974), 22 Ill. App. 3d 964, 318 N.E.2d 327.

The foregoing should have ended the matter. The May 20 order would be overturned, as the Track requested, albeit for a reason not raised in its appeal, and the Department could still seek to prevent any irreparable injury to the charging parties by seeking temporary relief in the manner prescribed by statute. It has ample time to do so, since the facilities in question are currently unoccupied and will not be in use for several months; however, not content with this result, the parties still seek a ruling on the merits from this court. Their reasoning is unclear, since both agree that the order must be vacated, and neither parties' rights would be unalterably foreclosed by that result. In any event, they have attempted to obtain a decision by the unprecedented filing of a joint motion before this court on October 31, 1983, after appellants' brief was filed, asking us to amend the May 20 judgment and the trial court's memorandum opinion to grant a preliminary injunction pending completion of administrative proceedings before the Illinois Human Rights Commission. They reason that this is an order which the trial court could have entered, had it been requested, because it did have the power to enter a preliminary injunction; therefore, they posit, we can "correct" the error in the entry of a permanent injunction by the simple procedure of amending the May 20 order and then considering whether the trial court abused its discretion in granting a preliminary injunction.

We granted the motion to amend on November 15, 1983; however, because we were concerned about the propriety of reviewing an order which the trial court not only did not enter but was never asked to enter, we asked the parties during oral argument to address the question of our jurisdiction to review an order from which, because it never existed, no appeal was ever taken—an order which, in effect, was entered by this court. Subsequently, both parties filed memoranda in support of jurisdiction.

■ ■ Our concern in this matter is not merely procedural; this court's jurisdiction is limited to consideration of those matters which

are raised in a notice of appeal (*Rinck v. Palos Hills Consolidated High School District No. 230* (1979), 82 Ill. App. 3d 856, 403 N.E.2d 470), and it is immaterial that, in the instant case, both parties advocate our assumption of jurisdiction since they may not confer jurisdiction upon us by stipulation or acquiescence (*In re Marriage of Peterson* (1980), 85 Ill. App. 3d 520, 406 N.E.2d 934), any more than they could confer power on the trial court to enter a permanent injunction. Even if neither party contests our jurisdiction, it is our duty to consider that matter (*Allabastro v. Wheaton National Bank* (1980), 91 Ill. App. 3d 222, 414 N.E.2d 537), and we must decline to proceed where jurisdiction is lacking (*City Wide Carpet, Inc. v. John* (1980), 83 Ill. App. 3d 538, 404 N.E.2d 465).

The parties here agreed at trial that no preliminary injunction should issue, and therefore would have been estopped from asserting on appeal that the trial court erred in failing to enter such an order. (See *Ziebell v. Board of Trustees* (1979), 73 Ill. App. 3d 894, 392 N.E.2d 101.) Since the trial court did not err in failing to grant a preliminary injunction, the parties asked us to amend the May 20 order before considering the merits of the order actually entered and granting appropriate relief. The question, then, is whether we have the power to amend the May 20 order, as requested, and therefore have jurisdiction to consider the propriety of granting a preliminary injunction.

■ The starting point for our inquiry is Supreme Court Rule 366(a) (87 Ill. 2d R. 366(a)), wherein the powers of a reviewing court are enumerated. That Rule contains two sections which address certain powers of amendment:

> "In all appeals the reviewing court may, in its discretion, and on such terms as it deems just,
>
> (1) exercise all or any of the powers of amendment of the trial court;
> * * *
> (3) order or permit the record to be amended by correcting errors or by adding matters that should have been included * * *." (87 Ill. 2d R. 366(a).)

We do not believe that the motion to amend is supportable under either of these subsections. With regard to subsection 1, we note that in order to have jurisdiction, we must be able to make our amendment retroactive to May 20, 1983, since the only jurisdiction we have is based on the notice of appeal from the May 20 order. Thus, our November 15 order amending the judgment must of necessity be a *nunc pro tunc* order. Clearly, under the circumstances of this case, the trial

court could not have entered such an order, since a *nunc pro tunc* order serves merely to correct a prior order which incorrectly reflects what the trial court actually ruled at that time (*Bradley v. Burrell* (1981), 97 Ill. App. 3d 979, 424 N.E.2d 15); it may not be used to correct judicial errors or supply omitted judicial action (*Trosper v. Trosper* (1980), 82 Ill. App. 3d 1012, 403 N.E.2d 692). In the instant case, the May 20 order accurately reflected the trial court's ruling; it was asked to enter a permanent injunction, and it did so. In view thereof, the trial court, and therefore we, could not correct it through entry of a *nunc pro tunc* order.

■ Subsection 3 of Rule 366(a) is also inapplicable, since it obviously has reference to our power to amend the record to correct inaccuracies or omissions. We do not believe that it gives us the power to rewrite the record as the parties wish it were written, so that it reflects an action which the trial court neither took nor contemplated taking. This subsection is related to Rule 329, which provides:

> "The record on appeal shall be taken as true and correct unless shown to be otherwise and corrected in a manner permitted by this rule. Material omissions or inaccuracies *** may be corrected by stipulation of the parties or by the trial court *** or by the reviewing court or a judge thereof." (87 Ill. 2d R. 329.)

(See also *Catalano v. Pechous* (1978), 69 Ill. App. 3d 797, 387 N.E.2d 714.) The parties here have not shown that the record is inaccurate; in fact, they admit that the order entered is an entirely accurate reflection of what the trial court ordered.

■ The motion to amend, then, is not supported by either of the powers of amendment granted to this court pursuant to Rule 366. However, in their motion, as well as in the supplemental memoranda on the question of jurisdiction, the parties assert, without argument or citation to any authority, that our November 15 order amending the trial court's judgment is authorized by subsection 5 of Rule 366(a), which provides that we may "enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require." (87 Ill. 2d R. 366(a)(5).) We have searched in vain for a case which would support the parties' interpretation of subsection 5; however, it became clear to us in the course of that research, although no case directly so states, that this rule is related to the relief which we may grant when, after reviewing the merits of the issues presented on appeal, we determine that the trial court has erred. Thus, pursuant to this rule, we need not merely decide whether to affirm or reverse; if no

factual issues exist, we may take such action as the trial court was requested to take, but refused, without remanding the cause for further proceedings. We do not believe that it was intended to grant us the power to rewrite the record in order to review an order which, in hindsight, the parties wish they had requested. To rule otherwise would completely destroy the concept of appellate jurisdiction and expand our function beyond that of an appellate court. In effect, what the parties ask us to do is to enter a preliminary injunction, without even considering whether that action is appropriate, and then review our own order. This would be particularly inappropriate here, where the temporary restraining order which remains in effect by agreement of the parties is, in substance, a preliminary injunction.

For the foregoing reasons, we believe that our November 15 order was improvidently granted and should be vacated. The trial court's order of May 20, granting a permanent injunction, was outside the court's power as provided in section 8—111(D) of the Act (Ill. Rev. Stat. 1981, ch. 68, par. 8—111(D)) and is also vacated.

This court's order of November 15, 1983, is vacated.

The trial court's order of May 20, 1983, is vacated, and this matter is remanded for further proceedings.

MEJDA, P.J., and WILSON, J., concur.