TIMOTHY DeKING, Plaintiff-Appellee, v. URBAN INVESTMENT AND DEVELOPMENT COMPANY *et al.*, Defendants (John J. Lowrey, Respondent-Appellant).

First District (1st Division) No. 86—0013

Opinion filed May 4, 1987.

QUINLAN, P.J., dissenting.

Henry B. Vess III, of Chicago, for appellant.

Jack Joseph and Michael P. Myers, both of Joseph, Susman & Myers, of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal from orders of the circuit court of Cook County denying respondent John J. Lowrey's request for a change of venue and determining that Lowrey had no right to attorney fees resulting from a case in which he had been replaced as counsel. The principal issue on appeal is whether the court had subject matter jurisdiction under the attorney's lien statute (Ill. Rev. Stat. 1985, ch. 13, par. 14), to adjudicate Lowrey's right to claim attorney fees on any other theory or basis where Lowrey did not assert a lien under the statute.

Timothy DeKing was injured on April 7, 1980, and on November 9, 1981, filed suit to recover damages resulting from that injury. His lawyer at that time was John J. Lowrey (Lowrey). On April 7, 1982, the court entered an order substituting Anesi, Ozmon, Lewin & Associates, Ltd. (Ozmon), for Lowrey as counsel for plaintiff and granting plaintiff leave to file an amended complaint adding additional parties defendant. On July 23, 1985, the case was assigned to Judge Breen and on September 23, 1985, it was dismissed pursuant to a settlement in the amount of $2,500,000.

Pursuant to notice to Lowrey, on October 7, 1985, Ozmon presented a motion to adjudicate Lowrey's attorney's lien. Hearing was set on the motion for October 28, 1985, and Lowrey was granted leave to file a response on that date. On October 23, 1985, Lowrey filed a two count suit requesting fees and costs for legal services rendered to DeKing and seeking recovery for tortious interference with Lowrey's legal representation of DeKing. The complaint did not allege the existence of any attorney's lien or seek the adjudication of any such lien.

At the October 28 hearing on the motion to adjudicate the attorney's lien, Lowrey's counsel presented a written verified petition for change of venue under section 2—1001(a)(1) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1001(a)(1)), based upon the fact that the trial judge had participated in extensive settlement nego-

tiations and other aspects of the DeKing suit and that the testimony of the court would therefore be material to the issues in both the motion to adjudicate the lien and in Lowrey's pending suit for fees. Lowrey contended that extensive discovery would be required to determine the relative values of the services rendered by the three law firms and that a percentage value should be assigned to each.

The petition for a change of venue was denied and an order was entered requiring Lowrey to present the court with a fee petition by November 11, 1985. Lowrey did not present a fee petition, but on November 12 he filed a response stating that he did not assert a lien, that he had filed a separate suit against DeKing and his other lawyers, and that the court had no jurisdiction to adjudicate his attorney's lien.

At a second hearing on the motion to adjudicate the lien, on November 25, 1985, Lowrey's counsel asserted that even if there was no lien, there might still be fees due to Lowrey. The court agreed but stated that unless Lowrey proceeded in the present suit, the court would deny him any right to fees. Lowrey refused to submit his claim for fees to the court, arguing that the only issue before the court was the adjudication of Lowrey's rights under the attorney's lien statute, not whether he was entitled to fees on any other basis.

The court rejected Lowrey's arguments and issued an order which provided in pertinent part:

"1. That Attorney John J. Lowrey has no attorney's lien rights in any of the proceeds of settlement of this cause or lien rights against any of the parties to this cause;

2. That Attorney John J. Lowrey is not entitled to any attorney's fees in relationship to this cause or any right to claim attorney's fees against the plaintiff or his attorneys, Anesi, Ozmon, Lewin & Associates, Ltd. and Williams & Marcus, Ltd., having declined to present any evidence as to any fees which he claims."

Lowrey appeals from the entry of paragraph 2 of the order, contending that the court lacked subject matter jurisdiction under the attorney's lien statute to enter any judgment beyond adjudication of an attorney's lien. We agree and reverse paragraph 2 of the order.

■■■ Although circuit courts have original jurisdiction over all justiciable matters (Ill. Const. 1970, art. VI, sec. 9), it is well settled that when a court's power to act is controlled by statute, the court is governed by the rules of limited jurisdiction. (*Brown v. VanKeuren* (1930), 340 Ill. 118, 122, 172 N.E. 1; *People ex rel. Illinois Department of Human Rights v. Arlington Park Race Track Corp.* (1984), 122 Ill. App. 3d 517, 521, 461 N.E.2d 505.) While the legislature generally has no

power to limit or preclude a court's constitutional jurisdiction to hear a matter, an exception exists when the legislature creates a right having no counterpart in common law or equity, since the legislature has defined the justiciable matter by enacting the statute. (*Skilling v. Skilling* (1982), 104 Ill. App. 3d 213, 219, 432 N.E.2d 881.) The attorney's lien statute falls squarely within this exception to the circuit court's general jurisdiction and therefore the court's jurisdiction was limited by the language of the statute to consider only what the statute defined as a justiciable matter.

 Since the attorney's lien is a creature of statute, the statute authorizing the lien must be strictly construed, both as to establishing a lien and as to the right of action for its enforcement. (*Haj v. American Bottle Co.* (1913), 261 Ill. 362, 366.) Attorneys who do not strictly comply with the statute have no lien rights. (*Cazalet v. Cazalet* (1944), 322 Ill. App. 105, 107, 54 N.E.2d 61 (notice by ordinary mail insufficient where statute required registered mail); *Reynolds v. Alton, Granite & St. Louis Traction Co.* (1918), 211 Ill. App. 158, 161 (notice sent to attorney for party rather than party insufficient to establish lien).) However, an attorney's lien is not the sole remedy for an attorney who is seeking to collect fees. An attorney who has not perfected a lien is still entitled to sue the client or former co-counsel to recover for his services. See *Baker v. Baker* (1913), 258 Ill. 418, 421, 101 N.E. 587; *Schniederjon v. Krupa* (1985), 130 Ill. App. 3d 656, 661, 474 N.E.2d 805; *Sullivan v. Fawver* (1965), 58 Ill. App. 2d 37, 42, 206 N.E.2d 492.

Under the attorney's lien statute, the trial court had subject matter jurisdiction only to adjudicate whether Lowrey had a lien and if so, the amount of the lien and the manner of its enforcement. The court did so in paragraph 1 of the order which stated that Lowrey "[had] no attorney's lien rights in any of the proceeds of settlement of this cause or lien rights against any of the parties to this cause."

██ The concluding paragraph of the statute provides that "[o]n petition filed by such attorneys or their clients any court of competent jurisdiction shall, on not less than five days' notice to the adverse party, adjudicate the rights of the parties and enforce such lien." (Ill. Rev. Stat. 1985, ch. 13, par. 14.) In our opinion, the phrase "adjudicate the rights of the parties and enforce such lien" restricts the court to a consideration of any existing lien rights. To interpret this phrase to allow the court to consider any theory of recovery other than lien rights would violate the requirement that the statute be strictly construed. *Crabb v. Robert R. Anderson Co.* (1969), 117 Ill. App. 2d 271, 275-76, 254 N.E.2d 551, *appeal denied sub nom. Blowitz v. Heilgeist* (1970), 42 Ill. 2d 586.

■ The plaintiff argues that the trial court's order of October 25, 1985, directing Lowrey to submit a petition for fees made it clear that the court intended to adjudicate the entire question of fees, not merely whether Lowrey had perfected a lien. Plaintiff contends that under section 2—604 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—604), the court had this authority. Section 2—604 provides:

"Except in case of default, the prayer for relief does not limit the relief obtainable, but where other relief is sought the court shall, by proper orders, and upon terms that may be just, protect the adverse party against prejudice by reason of surprise."

This argument ignores the fact that the only motion before the court sought only the adjudication of Lowrey's attorney's lien. There was no prayer for general or alternative relief and the court's jurisdiction was limited accordingly. (*Crabb v. Robert R. Anderson Co.* (1969), 117 Ill. App. 2d 271, 275-76, 254 N.E.2d 551, *appeal denied sub nom. Blowitz v. Heilgeist* (1970), 42 Ill. 2d 586; *Walsh v. Union Oil Co.* (1970), 131 Ill. App. 2d 1015, 1022, 268 N.E.2d 706, *aff'd and remanded on other grounds* (1972), 53 Ill. 2d 295, 291 N.E.2d 644.) Moreover, section 2—604 does not excuse the necessity for pleadings and proof to support the relief granted as required by section 2—1301(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1301(a)).

Even though the court ruled on November 25, 1985, that Lowrey had no right to collect fees under any basis, he nevertheless then directed that Lowrey present a request for fees immediately, irrespective of the absence of pleadings or proofs from the movants, the Ozmon and Williams law firms. Lowrey was given no time to conduct discovery or to subpoena witnesses or records and was therefore not protected from prejudice by reason of surprise as required by section 2—604.

Plaintiff cites *Pinelli v. Alpine Development Corp.* (1979), 70 Ill. App. 3d 980, 388 N.E.2d 943, *appeal denied* (1979), 79 Ill. 2d 617, to support the contention that it was appropriate for the trial court to grant relief not requested in plaintiff's pleadings. *Pinelli*, however, was a second appeal after a second hearing in which the appellate court in the first appeal had reversed and remanded the case because in the first trial, the court had granted relief not requested in the pleadings after the trial was concluded. The parties in *Pinelli* were aware of the prior pleadings and the original relief granted by the trial court and therefore were not prejudiced by surprise when the relief given was not precisely what had been requested. *Pinelli v. Alpine Development Corp.* (1979), 70 Ill. App. 3d 980, 1002-04, 388 N.E.2d 943, *appeal denied* (1979), 79 Ill. 2d 617.

In further support of his claim that the trial court was not limited to consideration of a lien, plaintiff cites *Leonard C. Arnold, Ltd. v. Northern Trust Co.* (1987), 116 Ill. 2d 157 for the principle that even in the absence of statute, a court may establish procedures to protect the rights of attorneys under contingent fee contracts and to effect the policy established in *Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 399 N.E.2d 969, that a client must have a meaningful right to discharge an attorney whom he has hired under a contingent fee contract.

The relevant issue in *Arnold* was whether the Nineteenth Judicial Circuit could create a judicial procedure to establish the rights of an attorney who had a contingent fee contract with a minor client. The challenged rule provided that contingent fees in cases involving injured minors would be limited to 25% with the exception that an attorney could petition the court for an additional amount. The court could then adjust the fee to an amount it considered fair and reasonable irrespective of the 25% limitation.

The Illinois Supreme Court found that Rule 9.20(e) was proper because it merely provided a procedural mechanism for enforcing a restriction embodied in substantive law, *i.e.*, that all fees be reasonable, but did not modify the substantive law of the State relative to contingent fee arrangements. The court noted that the purpose of the rule was to protect minors while avoiding trials over the reasonableness of fees in settlements involving personal injuries to minors. The court reasoned that such trials could have the deleterious effect of consuming a substantial portion of the minor's estate and would also create an adversary relationship between the minor and his attorney. *Leonard C. Arnold, Ltd. v. Northern Trust Co.* (1987), 116 Ill. 2d 157, 167.

The rule at issue in *Arnold* had been promulgated by a majority of the circuit judges in the Nineteenth Circuit, pursuant to Supreme Court Rule 21(a) (87 Ill. 2d R. 21(a)); section 28 of "An Act relating to the circuit courts" (Ill. Rev. Stat. 1985, ch. 37, par. 72.28); and the Civil Practice Act (Ill. Rev. Stat. 1985, ch. 110, par. 1—104(b)); and was procedural in nature. In contrast, in the present case, the trial court's resolution of the fee issue was not pursuant to circuit rule, nor was it merely procedural. In effect, it would change the substantive law by making the attorney's lien statute an exclusive vehicle for determining an attorney's right to fees, rather than an addition to the common law remedies of breach of contract, *quantum meruit*, or the enforcement of common law liens.

The court's compelling interests in *Arnold* in protecting the economic interest of the injured minor and preserving the relationship be-

tween the minor client and his attorney also are not at issue here. In the case at bar, the reasonableness of the contingent fee is not at issue, nor is there a need to protect the relationship between the minor and his attorneys. Plaintiff Timothy DeKing's relationship with his present attorneys would not be impaired by any fee claims Lowrey may have, and the fact that Lowrey might have a right to fees also does not diminish DeKing's right under *Rhoades* to replace one attorney with another under a contingent fee contract. DeKing has already received his net proceeds from the settlement of this matter and under *Rhoades* would only be liable for one contingent fee. The apportionment of fees between Lowrey and Ozmon, if any, would come out of the already allocated contingent fee and therefore would not threaten the estate of the minor plaintiff.

This court recognizes the importance of judicial economy, and to that end, it might be desirable to have a structure that would require the summary disposition of attorney fees under certain circumstances. In the present case however, the interests of the discharged attorney and the present attorney are adverse and the fee at issue is substantial, presumably in excess of $800,000. Under these circumstances, we do not believe that a delay in the fee determination pending a resolution of the rights of the discharged attorney would work an undue hardship on plaintiff's present attorneys.

Having determined that the trial court lacked jurisdiction to adjudicate any issue other than the existence of an attorney's lien, we reverse paragraph 2 of the order of November 25, 1985. Accordingly, we need not reach the issue of whether the trial court erred in denying Lowrey's petition for change of venue.

Order reversed in part.

BUCKLEY, J., concurs.

PRESIDING JUSTICE QUINLAN, dissenting:

I respectfully dissent. The majority's decision holds that the trial court lacked subject matter jurisdiction under the attorney's lien statute (Ill. Rev. Stat. 1985, ch. 13, par. 14), to enter any judgment other than an adjudication of the existence or nonexistence of an attorney's lien. Specifically, the majority says that the trial court in this case only had subject matter jurisdiction to adjudicate whether Lowrey had a lien, and if so, the amount of the lien and the manner of its enforcement. Thus, under the majority's ruling, the proceeding here was apparently over when Mr. Lowrey filed a response with the court on No-

vember 12, 1985, stating that he did not have a lien. I do not agree with this interpretation of the attorney's lien statute and believe that such a resolution is contrary to existing authority, is inconsistent with the plain language of the statute, and is contrary to the public policy of the State, as reflected by the attorney's lien statute.

The supreme court itself, in *Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 399 N.E.2d 969, held that while a client had an absolute right to discharge an attorney, even without cause, that attorney was entitled to compensation determinable on a *quantum meruit* basis, even if he did not have a lien under the attorney's lien statute. In *Rhoades*, the appellate court had held that the attorney had no claim to any fee (on other grounds) and directed that the attorney's petition under the attorney's lien statute (Ill. Rev. Stat. 1985, ch. 13, par. 14) be dismissed. (*Chapman & Chapman v. Rhoades* (1978), 67 Ill. App. 3d 1037, 385 N.E.2d 723.) In reversing the appellate court, however, the *Rhoades* court did not affirm the dismissal even though the supreme court itself had found that there was in fact no attorney's lien; rather, our supreme court remanded the case to the circuit court with directions to determine the appropriate attorney fees on a *quantum meruit* basis rather than on a contingent fee basis.

Additionally, the legislature appears to have granted broad subject matter jurisdiction to the courts under the attorney's lien statute to permit adjudication of all claims to legal fees. The language of the act, in my opinion, clearly allows for a full determination of the right to fees (as, I believe, the *Rhoades* decision has indirectly so held) of all the potential claimants to the *res, i.e.,* the proceeds of the judgment or settlement. *Cf. McArdle v. Great American Indemnity Co.* (1942), 314 Ill. App. 455, 41 N.E.2d 964 (court has broad powers to adjudicate attorney's lien in which attorney and client are joint claimant to the proceeds of lien of the judgment); *McCallum v. Baltimore & Ohio R.R. Co.* (1942), 379 Ill. 60, 39 N.E.2d 340 (judgment constituted the *res* for distribution among plaintiff and all attorneys); *Mid-City Trust & Savings Bank v. City of Chicago* (1937), 292 Ill. App. 471, 11 N.E.2d 617 (where all parties were before court already, attorney need not file independent suit for fees).

In a similar situation, where the statutory language was even less clear, our supreme court held that the Contribution Among Joint Tortfeasors Act (Contribution Act) (Ill. Rev. Stat. 1983, ch. 70, pars. 301 through 305) required that resolution of that action be determined with the underlying tort claim, even though the tortfeasor also had a separate right of action for contribution as did the attorney here. *Laue v. Leifheit* (1984), 105 Ill. 2d 191, 473 N.E.2d 939.

The language of the Contribution Act, section 5, specifically established a separate independent action for contribution similar to Mr. Lowrey's underlying contractual right to fees. Section 5 provided:

"A cause of action for contribution among joint tortfeasors may be asserted *by a separate action before* or *after payment*, by counterclaim or by third-party complaint in a pending action." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 70, par. 305.)

However, our supreme court held that this right to contribution must be enforced, in the underlying tort action, if there is one. The court said:

"We believe it is clear from the statutory language in section 5 that if there is a pending action, which there was in the instant case, then the party seeking contribution must assert a claim by counterclaim or by third-party claim in that action.

In addition to the fact that the statutory language of section 5 clearly requires the filing of an action for contribution in the original action, there are strong public policy reasons for such a requirement. One jury should decide both the liability to the plaintiff and the percentages of liability among the defendants, so as to avoid a multiplicity of lawsuits in an already crowded court system and the possibility of inconsistent verdicts. Requiring the parties to litigate the matter in one suit will also save court time and attorney fees." *Laue v. Leifheit* (1984), 105 Ill. 2d 191, 196-97, 473 N.E.2d 939, 941-42.

I submit that the language of the attorney's lien statute not only authorizes, but clearly directs the trial court to adjudicate the rights of *all* the parties to the *res, i.e.,* settlement or judgment, and to then enforce the lien appropriately upon the *res*. The attorney's lien statute provides in pertinent part:

"Attorneys at law shall have a lien upon all claims, demands and causes of action ***. Such lien shall attach to any verdict, judgment or order entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the notice. *On petition filed by such attorneys or their clients any court of competent jurisdiction shall, on not less than 5 days' notice to the adverse party, adjudicate the rights of the parties* and enforce such lien." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 13, par. 14.

It should be noted that here it was the second attorney, Ozmon, also with a claim to an attorney's lien, who filed this petition under the statute to adjudicate the attorney's lien upon the *res* of the settlement.

Ozmon gave the requisite notice to Mr. Lowrey, the adverse party, and requested the court to determine the rights between them. This, in my opinion, is exactly what the statute intends.

Additionally, as in the *Laue* case, there are strong public policy reasons in this situation for the requirement that a full adjudication of the rights of all the parties take place in the matter presently before the court. As the court said in *Laue*, one court should decide the liability, here, the liability of the client to pay attorney fees, and the same court should make a determination of how those fees should be apportioned between the claimant attorneys. Such a requirement would also, of course, help to avoid a multiplicity of litigation in our already crowded court system and the possibility of inconsistent decisions. Further, as the *Laue* court noted, requiring the parties to litigate the matter in one suit will save court time and attorney fees.

If Mr. Lowrey were permitted to pursue an independent suit for attorney fees, the issue would then arise as to whether he would be bound or affected by a determination of the trial court here that the second attorney's lien, *i.e.*, Ozmon's, was valid and entitled Ozmon to the full contingent fee. Contrary to the majority's statement that any apportionment of fees in a second suit would come out of the "already allocated [apparently by the trial court here] contingent fee and therefore would not threaten" the proceeds of the settlement the client has already received, in fact, any award of attorney fees would necessarily come out of Mr. DeKing's proceeds. Mr. Lowrey's suit is against his client, Mr. DeKing, as it should be, because Mr. Lowrey has a contract with Mr. DeKing and not Ozmon. In addition, neither the *res* of the present lawsuit, *i.e.*, the fee which would reflect the full contingent fee percentage of the settlement, nor Ozmon (at least as to any fee contract) would be before the court in the second suit. Accordingly, although there would be no delay (again, contrary to the majority's observation) in the fee determination for Ozmon, for Ozmon has already been awarded the full contingent fee by the trial court here, there would be a delay in the final determination of Mr. DeKing's net proceeds from the settlement because there still must be a resolution of the contingent liability of Mr. DeKing for any fees he may owe Mr. Lowrey. Furthermore, Mr. Lowrey's lawsuit for fees would not result in any apportionment of the fees with Ozmon, inasmuch as Mr. Lowrey has no agreement with Ozmon concerning these fees at all. (*Cf. Schneiderjon v. Krupa* (1985), 130 Ill. App. 3d 656, 660, 474 N.E.2d 805, 809; *Sullivan v. Fawver* (1965), 58 Ill. App. 2d 37, 42, 206 N.E.2d 492, 494.) It is only Mr. DeKing, the client, that Mr. Lowrey can claim any agreement with and, therefore, any basis for a suit for fees.

Hence, it is the client, and not the second attorney, who will face another lawsuit. It is also the client who will incur the obligation to pay additional attorney fees in defending this second lawsuit, which lawsuit will perhaps result in a judgment against the client for even additional attorney fees on the basis of his underlying agreement with Mr. Lowrey. In yet a third lawsuit, Mr. DeKing, the client, may or may not be able to recover back against Ozmon the judgment owed Mr. Lowrey for the value of his legal services.

In a similar setting concerning attorney fees, *Leonard C. Arnold, Ltd. v. Northern Trust Co.* (1987), 116 Ill. 2d 157, our supreme court upheld a circuit court's rule on the basis that it was consistent with public policy, *i.e.*, it avoided minitrials concerning fees in personal injury cases and prevented the depletion of the minor's estate. While the majority finds its ruling consistent with *Arnold*, in fact the actual result in its decision will lead to numerous trials over the reasonableness of fees in settlements (which, of course, will discourage such settlements) in personal injury suits and "needlessly consume a portion of the *** estate and automatically create an adversarial relationship between the attorney and his client." (*Leonard C. Arnold, Ltd. v. Northern Trust Co.* (1987), 116 Ill. 2d 157, 167.) See American Bar Association, Canons of Professional Ethics, Canon 14, which mandates that lawsuits with clients concerning fees are to be avoided.

Finally, I do not believe that Mr. Lowrey was entitled to any change of venue here as a matter of right. (See *In re Marriage of Zannis* (1983), 114 Ill. App. 3d 1034, 449 N.E.2d 892; *Templeton v. First National Bank* (1977), 47 Ill. App. 3d 443, 362 N.E.2d 33; *cf. Rosewood Corp. v. Transamerica Insurance Co.* (1974), 57 Ill. 2d 247, 311 N.E.2d 673.) Mr. Lowrey did not assert that the trial judge was prejudiced; he merely claimed that the trial judge had personal knowledge of what had occurred before him concerning Ozmon's representation, which knowledge would, Mr. Lowrey contended, be relevant in determining an allocation of any fees due. While it is questionable that such a contention can be a basis for a change of venue, it was, in any event, a matter of discretion for the trial court to decide. (*Hengels v. Gilski* (1984), 127 Ill. App. 3d 894, 469 N.E.2d 708.) Here, the trial court did not abuse its discretion in denying the motion.

Because Mr. Lowrey offered no evidence concerning the issue of his entitlement to a fee after he had been ordered to do so, I would affirm the decision of the trial court.