*In re* D.M., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. D.M., Respondent-Appellant).

Third District   No. 3—84—0489

Opinion filed March 28, 1985.

Robert Agostinelli and Jean Herigodt, both of State Appellate Defender's Office, of Ottawa, for appellant.

John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of Ottawa, for the People.

JUSTICE STOUDER delivered the opinion of the court:

The respondent minor, D.M., appeals from an adjudication finding him guilty of the offense of battery. Following the adjudication, the minor was committed to the Juvenile Division of the Department of Corrections (DOC). On appeal, the minor argues that he was not proved guilty of battery beyond a reasonable doubt. The respondent's second contention concerns whether the juvenile court had jurisdiction for the dispositional hearing. We affirm.

The minor was charged with two counts of aggravated battery on May 15, 1984. (Ill. Rev. Stat. 1983, ch. 38, pars. 12—4(a), 12—4(b)(1).) The petition listed the 15-year-old minor and his mother and father as respondents. His mother received notice of the petition and the hearing date through personal service of a summons. Notice to the father,

a Chicago resident, was first attempted through service by certified mail. That service was returned unclaimed.

The minor appeared in court with his mother on June 28, 1984, and denied the allegations. Service was again attempted on the father by certified mail on June 29, 1984, but this notice was also returned unclaimed. Personal service was then attempted at the father's last known Chicago address, but that too failed.

On July 11, 1984, the minor, represented by counsel, and his mother appeared for the adjudicatory hearing. Various facts and events were disputed by the witnesses. The State began with testimony of the victim, 18-year-old Quincy Blake. He stated that on May 12, 1984, in the area of Taft Homes, he and three other boys observed D.M. walking his bike through the Taft grounds. D.M.'s presence angered the group because D.M. belonged to a rival gang.

Blake then walked across the street to confront D.M. According to Blake, D.M. slapped him, thereby causing a wrestling match to ensue between the two of them. They wrestled for about five minutes. At some point, Blake felt something cutting his back, then his left arm, and, finally, an area above his left ear. Some bystanders then separated the boys. Blake stated he saw D.M. throw an object which looked like a straight razor into the street. No weapon, though, was ever recovered.

Blake's injuries required 29 stitches in his back and six stitches in his head. One of Blake's companions that night testified next for the State. He said that D.M. and Blake were talking to each other and then began fighting. After the two boys were separated, another boy threatened D.M. with a baseball bat until D.M. threw what appeared to be a utility knife into the street. This testimony completed the State's evidence.

An adult bystander then testified for the defense, saying that she saw a group of eight to 12 boys standing around D.M. after the fight with Blake. This witness observed one of the boys strike D.M. with an object while he was still on the ground. She did not see D.M. with a weapon.

A 14-year-old boy testified next for the defense, saying he was present with Blake and others when D.M. first appeared with his bike. The victim, however, had stated earlier that the 14-year-old boy had not been there that night. According to the witness, Blake approached D.M. from behind, armed with two knives which he dropped when they began fighting. One of Blake's friends then picked up a knife and attempted to strike D.M. The boy missed D.M., cutting Blake instead. This witness claimed that D.M. did not use any weapon

in his fight with Blake, that after the fight Blake and the other boys agreed to blame D.M. for the wounds Blake received. This witness concluded by saying he had not talked with D.M. about his testimony. The final witness for the defense was D.M. When the fight with Blake took place, he had been on authorized absence from the Juvenile Division of DOC for prior incidents involving theft. As Blake approached him that night, D.M. continued to walk, but Blake struck at him with a razor. They began to wrestle and Blake dropped a knife he had been holding. D.M. released Blake when someone threatened him with a meat cleaver and someone else put a gun to his head. D.M. then stated that he was hit on the head with the cleaver, and the other boys began to kick him. An older man appeared and pulled D.M. away from the group. According to D.M., he was not armed, and he did not know who inflicted Blake's injuries.

The trial court concluded that the evidence was insufficient to prove great bodily harm and that the utility knife was a dangerous weapon. The court found D.M. guilty of the lesser included offense of battery because it did not view the defense account of the fight as accurate or credible.

The dispositional hearing was held on July 18, 1984. D.M., represented by counsel, and his mother attended the hearing although notice had not been served on the respondents. The court considered a social history report which recommended recommitment. The court concluded that D.M. could not control his behavior and thus recommitted him to DOC, noting, however, that D.M.'s conduct was, to some degree, provoked by the victim. D.M. then filed the instant appeal.

■ The first issue on appeal concerns whether the minor's guilt of battery was established beyond a reasonable doubt. D.M. testified that he did not have or use any weapons in his fight with the victim. Yet he could not offer any explanation as to how the stab wounds were sustained by the victim. The claim of the 14-year-old defense witness that one of the victim's friends accidentally inflicted the wounds in his efforts to cut D.M. was rejected by the trial court as "unbelievable and incredible."

The trial court in this case was presented with various witnesses who expressed differing versions of the events in question. The court was required, as the trier of fact, to weigh the credibility of the witnesses. The trial court found the testimony of the State's witnesses to be more credible than that offered by the defense witnesses.

We find, on the basis of the evidence presented, that the trial court's assessment of the testimony was adequate and sufficient to support its decision. The decision of a trial court will not be reversed

on review unless the evidence is palpably contrary to the finding or so unreasonable, improbable or unsatisfactory as to cause reasonable doubt as to the guilt of the accused. *People v. Reese* (1973), 54 Ill. 2d 51, 294 N.E.2d 288.

■ The final issue raised on appeal concerns the juvenile court's jurisdiction for the dispositional hearing. The minor argues that because his father was not given notice of the dispositional hearing, the court lacked jurisdiction to commit him to DOC. The minor did not contest the court's jurisdiction at the adjudicatory hearing.

It is true that notice was not served on the respondents for the dispositional hearing. It is also true, however, that the requirements of notice and service were fulfilled for the adjudicatory hearing. The minor and his mother attended both hearings. The court was unsuccessful in its three attempts to serve the father, who lived in Chicago, and the father did not attend either hearing.

As to the jurisdictional issue in the case at bar, we find that the juvenile court did have jurisdiction for the dispositional hearing. Although the father was not present for either hearing, the State made sufficient efforts to locate and serve the father with notice of the adjudicatory hearing. It was not required to make additional attempts to serve the father for the second hearing because the court's initial jurisdiction, which was proper, continued until all issues of fact and law had been decided.

Once attached, a court's jurisdiction over the subject matter and the parties continues, ceasing only upon rendition of the final judgment. A juvenile court's jurisdiction terminates after the entering of a final discharge order or when the minor attains the age of 21. (Ill. Rev. Stat. 1983, ch. 37, par. 705—11; *In re Thompson* (1980), 79 Ill. 2d 262, 402 N.E.2d 609.) The trial court in the instant case thus possessed jurisdiction to enter its dispositional order.

The case at bar is distinguishable from *People v. R.S.* (1984), 104 Ill. 2d 1, 470 N.E.2d 297. In that case, the trial court never acquired jurisdiction over the minor, the parents or the subject matter because the parents were not given notice of the initial adjudicatory hearing. This defect did not exist in the instant case.

Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

HEIPLE, P.J., and SCOTT, J., concur.