*In re* ARDEDIA L., a Minor (Ardedia L., a Minor, Petitioner-Appellee, v. The Department of Children and Family Services, Respondent-Appellant).

First District (6th Division)   No. 1—92—4327

Opinion filed June 25, 1993.—Rehearing denied August 25, 1993.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General; and Susan Frederick Rhodes, Assistant Attorney General, of Chicago, of counsel), for appellant.

Patrick T. Murphy, Public Guardian, of Chicago (Kass A. Plain and Kathleen G. Kennedy, of counsel), for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

This is an interlocutory appeal from an order of the juvenile court of Cook County requiring the appellant, the Illinois Department of Children and Family Services (DCFS), to provide the petitioner, Ardedia L., a ward of DCFS, with day care services for her baby, for a period of six months beyond her twenty-first birthday. DCFS contends that the order, issued November 4, 1992, is invalid under the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1991, ch. 37, pars. 801—1 *et seq.*) because it requires DCFS to provide services to Ardedia beyond the point at which her wardship and the jurisdiction of the juvenile court terminate.

The relevant facts are as follows. Ardedia was born on December 15, 1971. On September 14, 1973, she was placed in the temporary custody and guardianship of DCFS. On April 18, 1975, the guardianship was made permanent until Ardedia reached the age of 21. On July 22, 1980, the court appointed the Cook County public guardian as Ardedia's guardian *ad litem.* The parental rights of Ardedia's natural parents were terminated in February 1981.

In May 1991, the juvenile court noted that DCFS's goal for Ardedia, who was then 19 years old, was independent living. Beginning in January 1992, Ardedia resided in her own apartment as a participant in an independent living program supervised by a private organization known as Sullivan House. At the same time, Ardedia was attending Kennedy-King College. In February 1992, Ardedia gave birth to a baby girl. The baby is not a ward of the State.

Since Ardedia's transition into the independent living program, she has been receiving individual and group counseling on a weekly basis. One of the service plans developed for Ardedia by DCFS was to secure day care for her baby so that she could remain in school or obtain employment. Since the birth of her baby, Ardedia has been unable to return to school and has had to turn down job offers because of the lack of day care services.

Although both Ardedia and DCFS had made continued attempts since February 1992 to secure day care services, they met with no success. On July 1, 1992, the juvenile court heard a progress report relating to the issue of day care services for Ardedia. Gloria Robinson, program director for Sullivan House, detailed the efforts that

had been made to secure day care services. She explained that day care providers contacted originally were contacted again several months later, but there still remained no openings. Ardedia named some of her friends who were available to care for her baby, but they were ineligible because they were minors.

Numerous reasons existed for the inability to find appropriate day care for Ardedia's baby. Several providers who were contacted had no vacancies. Ardedia was placed on three waiting lists, but she was informed that it would be many months, if not years, before those providers would have a vacancy. Other day care providers would not deal with Ardedia because she was not employed. Still others refused to work with DCFS because of its method of payment by voucher, preferring instead to receive cash payments.

At the July 1, 1992, progress hearing, the public guardian stated that Ardedia needed day care in order to attend college or to secure a job. Consequently, she requested the juvenile court to issue an order compelling DCFS to provide Ardedia with appropriate day care. Although a caseworker from Sullivan House was present at the hearing, no attorney representing DCFS was present.

The caseworker from Sullivan House testified concerning the difficulty in obtaining day care services for Ardedia's baby. She testified that even though DCFS had no financial responsibility for the baby, since the baby was not a ward of the State, DCFS was nevertheless assisting Ardedia in finding day care services. The juvenile court issued an order without prejudice, because of the absence of DCFS's attorney, directing DCFS to secure day care services for Ardedia's baby in order that Ardedia could achieve independent living.

A progress hearing was held on September 8, 1992. The juvenile court was provided with a list of the day care providers DCFS had contacted. The court then sought and obtained assurances from the DCFS caseworker that DCFS would continue to search for appropriate day care.

A second progress hearing was conducted on November 4, 1992. The caseworker testified that the same problems of no vacancies, nonacceptance of DCFS vouchers, and inability to locate licensed providers remained. She stated that in addition to DCFS, both Ardedia and Sullivan House personnel had made attempts to locate suitable day care services. She informed the court that DCFS had been trying to locate such services since February 1992, when the baby was born, not just since the court order was entered in July. She confirmed that Ardedia had to turn down job offers and was unable to attend school

because she had no one to watch her baby. She also stated that Ardedia would be turning 21 the following month.

The public guardian then requested the court to enter an order requiring DCFS to keep Ardedia's case open for six months after she turned 21 so that DCFS could secure appropriate day care. The public guardian informed the court that there was no objection by the other side. However, no attorney representing DCFS was present.

The juvenile court entered an order requiring DCFS to keep Ardedia's case open for six months after her twenty-first birthday to enable her to obtain day care or a babysitter. The order further provided that if no other day care could be found, DCFS was to consider Ardedia's teenage friends as potential babysitters, although the court noted that this was not the best alternative. The juvenile court directed Ardedia to provide DCFS with the names of her friends so that it could conduct a background_check. It is from this order that DCFS now appeals.

■ Before we address the arguments raised by DCFS, it is appropriate to respond to the public guardian's argument on behalf of Ardedia that DCFS has waived review of the November 4 order because it failed to appeal an identical order issued by the juvenile court on July 1. The public guardian contends that the November 4 order merely provides for enforcement of the July 1 order, which DCFS did not appeal.

The November 4 order states:

"1. DCFS shall keep Ardedia's case open for six months after her 21st birthday so that day care can be arranged for Ardedia's 8 month old child.

2. DCFS shall consider Ardedia's teenage friends as babysitter and provide payment to them if no other day care can be located."

The July 1 order, on the other hand, only directed DCFS to "provide Ardedia with appropriate day care services to enable Ardedia to achieve independent living."

Were we to accept the public guardian's interpretation of the orders—that they merely require DCFS to provide day care services to Ardedia—we would agree that DCFS waived its right to appeal the November 4 order because it failed to timely appeal the July 1 order. However, it is apparent that the two orders, while involving the same subject matter of day care, compel DCFS to perform separate and distinct acts. The July 1 order required DCFS to provide Ardedia, then a ward of the State, with day care services for her baby. The November 4 order, however, required DCFS to keep Ardedia's case open

for six months after her twenty-first birthday so that DCFS could arrange day care for her baby. DCFS did not appeal the July 1 order because it had been attempting for several months on its own to find day care services for Ardedia, and no issue regarding the juvenile court's jurisdiction over Ardedia was created by the order since Ardedia was still a minor. This appeal challenges the provisions of the November 4 order requiring DCFS to keep Ardedia's case open beyond her twenty-first birthday and to provide services to Ardedia's baby after Ardedia turned twenty-one years.

Accordingly, we hold that DCFS has not waived review of the November 4 order, and this court has jurisdiction to entertain its appeal.

DCFS contends that the juvenile court lacked authority to retain jurisdiction over the subject matter of this case once Ardedia turned 21. DCFS is responsible for providing direct child welfare services to abused, dependent and neglected children under the age of 21 years to protect and promote their welfare. (Ill. Rev. Stat. 1989, ch. 23, par. 5005.) The Juvenile Court Act confers authority upon the juvenile court to guard these children for as long as their best interests and those of the public dictate or until they reach the age of 21. (Ill. Rev. Stat. 1991, ch. 37, par. 802—31.) At age 21, all proceedings under the Act with respect to any minor—including the wardship, custodianship, or guardianship of the minor—automatically terminate. Ill. Rev. Stat. 1991, ch. 37, par. 802—31.

Our constitution limits the jurisdiction of the circuit courts, of which the juvenile court is one, to "justiciable matters" (Ill. Const. 1970, art. VI, §9), and absent a justiciable controversy, courts lack subject matter jurisdiction. (*People v. Capitol News, Inc.* (1990), 137 Ill. 2d 162, 560 N.E.2d 303.) Subject matter jurisdiction is the power of the court to hear and determine causes of the general class to which the particular cause belongs (*In re Marriage of Hostetler* (1984), 124 Ill. App. 3d 31, 463 N.E.2d 955), and to grant the particular relief requested. (*People ex rel. Department of Human Rights v. Arlington Park Race Track Corp.* (1984), 122 Ill. App. 3d 517, 461 N.E.2d 505.) Although circuit courts have original jurisdiction over all justiciable matters, it is well settled that when a court's power to act is controlled by statute, the court is governed by the rules of limited jurisdiction. (*DeKing v. Urban Investment & Development Co.* (1987), 155 Ill. App. 3d 594, 508 N.E.2d 377; *Arlington Park Race Track,* 122 Ill. App. 3d 517, 461 N.E.2d 505.) While the legislature generally has no power to limit or preclude a court's constitutional jurisdiction to hear a matter, an exception exists when the legislature creates a right having no counterpart in common law or equity, since the legis-

lature has defined the justiciable matter by enacting the statute. (*De-King*, 155 Ill. App. 3d 594, 508 N.E.2d 377.) The Juvenile Court Act falls within this exception to the circuit court's general jurisdiction, and consequently the juvenile court's jurisdiction is limited by the language of the Act to consider only what the Act defines as a justiciable matter.

■ Under the Act, justiciable matters are confined to those involving *minors*, whom the Act defines as persons under the age of 21 years. (Ill. Rev. Stat. 1991, ch. 37, par. 801—10.) Once a minor turns 21, she is considered an adult (Ill. Rev. Stat. 1991, ch. 37, par. 801—3), and the juvenile court is no longer empowered to hear and determine the cause or to grant the relief requested. (*In re Thompson* (1980), 79 Ill. 2d 262, 402 N.E.2d 609; *In re D.M.* (1985), 131 Ill. App. 3d 962, 476 N.E.2d 771. See also *Miller v. General Telephone Co.* (1975), 29 Ill. App. 3d 848, 855-56, 330 N.E.2d 573, 580 ("[I]n those situations where the court's jurisdiction is actually confined by statute, either procedurally or substantively, the court can have jurisdiction over the subject matter, yet lose that jurisdiction by acting outside the intended scope or not in accordance with the procedure of the statute").) The juvenile court is not free to reject or expand its statutory authority despite the desirability or need for such action. *In re Peak* (1978), 59 Ill. App. 3d 548, 375 N.E.2d 862.

■ The November 4 order required DCFS to keep Ardedia's case open for six months after her twenty-first birthday so that day care services could be arranged for her baby. Ardedia turned 21 approximately six weeks later. On that day, Ardedia was no longer a minor, her wardship with DCFS automatically terminated, and the juvenile court was rendered powerless to order DCFS to provide any further services to her.

The public guardian characterizes the November 4 order as one merely aimed at enforcing the previously entered July 1 order, and he argues that the juvenile court may properly retain jurisdiction to enforce its prior orders. We reject this argument for the simple reason that, as we have already discussed, the two orders directed DCFS to perform separate and distinct acts. The earlier order required DCFS to provide Ardedia with appropriate day care services during a period in which she was still a minor and still a ward of DCFS, thus entitling her to such services; the subsequent order required DCFS to keep her case open for six months after she turned 21 so that DCFS could provide her with day care services, in contravention of the Act.

The juvenile court did not find that DCFS acted in bad faith or was negligent in not locating day care services for Ardedia's baby

while she was still a ward of the State, even though it searched for such services from the time of the baby's birth in February 1992. Various witnesses from DCFS and Sullivan House testified regarding the difficulty in securing day care services given Ardedia's current situation. There seems to be no question that DCFS did its best to assist Ardedia in providing the needed service.

Thus, we cannot agree with the public guardian that the November 4 order was issued merely to enforce the earlier order. On the contrary, at oral argument, counsel for Ardedia stated that the juvenile court "gave [Ardedia] back six of the months that DCFS did not provide [day care]." The argument that she is now entitled to compensatory services as an adult is without any basis in the law. The public guardian has cited no case which supports his argument that day care services for her baby are mandated by the Act to be provided by DCFS after she turns 21. As DCFS points out, other governmental agencies in this State have programs in place to provide the services that DCFS has been ordered to provide for Ardedia. We hold that the juvenile court did not have the authority to order DCFS to provide services to Ardedia once she turned 21.

In light of that holding, we need not address DCFS's additional contention that the juvenile court is barred by the doctrine of sovereign immunity from compelling DCFS, a State agency, to provide services to Ardedia. Nor need we address DCFS's remaining argument that the juvenile court lacked jurisdiction to order it to provide day care services because the recipient of the services was not Ardedia but rather was her baby, who was not a ward of DCFS.

For the foregoing reasons, the order of the juvenile court of Cook County directing DCFS to provide services to Ardedia after she reached 21 is reversed.

Judgment reversed.

EGAN and GIANNIS, JJ., concur.