*In re* K.S., Minor-Respondent (Sterling M. Ryder, Director of the Department of Children and Family Services, Appellant).

First District (4th Division)    No. 1—93—1753

Opinion filed June 30, 1994.—Rehearing denied August 3, 1994.

Christina M. Tchen, Hillary K. Krane, and Barry R. Conybeare, Special Assistant Attorneys General, of Skadden, Arps, Slate, Meagher & Flom, of Chicago, for appellant.

Patrick T. Murphy, Public Guardian, of Chicago (Lee Ann Lowder and Kathleen G. Kennedy, of counsel), for appellee.

JUSTICE CAHILL delivered the opinion of the court:

This is an interlocutory appeal from a juvenile court finding that a document prepared by the Department of Children and Family Services (DCFS) in connection with the death of K.S., a ward of the court, was not privileged and would be disseminated to the parties. We hold that the court was without jurisdiction when the order was entered and remand with directions that the underlying action be dismissed.

The court removed K.S. from the custody of his mother in October of 1990 because of her chronic drug abuse and her failure to provide adequate food and care to K.S. The court placed K.S. with Gary T. Morgan, the guardianship administrator of DCFS. On March 5, 1991, DCFS placed K.S. in the foster home of Michael and Denise Collins. On March 30, 1991, Michael Collins brought K.S. to a hospital because of a head injury. Collins claimed his daughter was changing

K.S.'s diaper when K.S. became agitated. He threw his head back and hit the bathroom tub. When K.S. arrived at the hospital he was vomiting, bleeding, and in cardiac arrest. K.S. died the next day.

The public guardian filed a motion on September 16, 1991, for a report of the guardian under the Juvenile Court Act (Ill. Rev. Stat. 1991, ch. 37, par. 802—28(1)). On December 3, 1991, the trial court ordered DCFS to disclose the names of children currently placed in the foster home where K.S. was injured. On January 14, 1992, DCFS reported the names of all foster children placed in the Collinses' home.

The court heard argument on the motion for a report of the guardian on May 18, 1992. The court granted the motion. On June 18, 1992, DCFS moved the court to reconsider its order for a report of the guardian. The court denied the motion to reconsider on November 24, 1992, and ordered Morgan to appear in court on December 11, 1992, to report on the death of K.S. The court also ordered: "All documents in possession of the Illinois DCFS regarding the death of *** [K.S.], the appropriateness of the foster home in which he died, and the investigation of this death shall be brought to Court by Gary T. Morgan on December 11, 1992 at 1:30 p.m. for inspection by the Court."

On December 15, 1992, Morgan testified about K.S.'s death and DCFS's response. DCFS tendered to the court approximately 253 pages of documents relevant to K.S.'s death. On January 28, 1993, counsel for DCFS informed the court of the status of DCFS's investigation. Counsel informed the court of a document prepared under a Federal consent decree entered in the case of *B.H. v. Suter* (N.D. Ill. December 20, 1991), No. 88 C 5599, which required DCFS's Bureau of Quality Assurance to conduct an administrative review of the death of a child in substitute care. Although DCFS was willing to tender the Administrative Review Team (ART) report for *in camera* review, it contended that the document was protected by the executive and self-critical analysis privileges and so unavailable to the parties. The court agreed to return the document to counsel for DCFS after *in camera* review.

On February 24, 1993, DCFS produced additional documents in the investigation of K.S.'s death. DCFS also gave the judge the ART report. While the judge held the report, DCFS filed a motion for nondisclosure of a privileged document. On April 29, 1993, the court heard argument. On May 20, 1993, the court ruled that it would immediately disclose the ART report to the public guardian, public defender, and the State's Attorney. DCFS filed a notice of appeal and moved for a stay of the order. We granted DCFS's motion for a stay pending further order of our court.

Although the parties have framed the issue on appeal in terms of privilege, the threshold issue is the jurisdiction of the juvenile court to enter any order concerning a ward of the court after the ward dies. Because we find that the juvenile court lost jurisdiction when K.S. died, we need not reach the privilege issue.

■ The circuit courts have jurisdiction over all justiciable matters. (Ill. Const. 1970, art. VI, § 9.) The legislature has no authority to limit the jurisdiction of the courts over justiciable matters which existed at common law. (*DeKing v. Urban Investment & Development Co.* (1987), 155 Ill. App. 3d 594, 508 N.E.2d 377.) However, the legislature has the power to create a justiciable matter—and thereby expand the jurisdiction of the circuit court—by passing a statute which creates rights and duties which did not exist at common law or in equity. (*In re M.M.* (1993), 156 Ill. 2d 53, 619 N.E.2d 702.) These special statutes define the limits of the newly created justiciable matter and in effect limit the authority of the circuit court. *Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504* (1989), 128 Ill. 2d 155, 538 N.E.2d 524.

In *In re M.M.* (1993), 156 Ill. 2d 53, 619 N.E.2d 702, our supreme court considered whether the juvenile court had authority to condition a court-appointed guardian's power to consent to adoption. In answering no, the court said that juvenile court cases were "special statutory proceedings" in which the court could exercise no power not specifically given in the Juvenile Court Act. (*In re M.M.*, 156 Ill. 2d at 65-67, citing *In re Sneed* (1977), 48 Ill. App. 3d 364, 363 N.E.2d 37, *aff'd* (1978), 72 Ill. 2d 326, 381 N.E.2d 272.) The court reasoned that because the circuit court did not have the power at common law, and the Juvenile Court Act did not grant the authority, the juvenile court lacked jurisdiction to do so. *In re M.M.*, 156 Ill. 2d at 64-67.

In *In re Ardedia L.* (1993), 249 Ill. App. 3d 35, 618 N.E.2d 804, the appellate court considered whether the juvenile court could order DCFS to provide day care services for six months beyond the twenty-first birthday of a ward. The court noted that all juvenile proceedings end on the ward's twenty-first birthday. (*In re Ardedia L.*, 249 Ill. App. 3d at 39, citing Ill. Rev. Stat. 1991, ch. 37, par. 802—31.) The court concluded that in the absence of a specific grant of authority in the Juvenile Court Act, the juvenile court had no jurisdiction to order day care for a ward older than 21. *In re Ardedia L.*, 249 Ill. App. 3d at 41.

■ We conclude that the juvenile court loses jurisdiction over matters concerning a ward of the court when a ward dies. The trial judge did not order the production of DCFS documents in this case to

enter an order relevant to the case of K.S. as a ward. The court stated: "The overriding public policy concerns dictate that all of these documents be made available to the counsel for the child and counsel for the parents. Because if there is anything in any of these documents which would directly or indirectly save some other child from the plight that *** [K.S.] suffered, that justifies full and complete dissemination of this information." That may be, but nowhere in the Juvenile Court Act is the court authorized to initiate, conduct, or facilitate the investigation of a ward's death.

■ The Act provides that its purpose is to

"secure for each minor *** such care and guidance, *** as will serve the moral, emotional, mental, and physical welfare of the minor and the best interests of the community; to preserve and strengthen the minor's family ties whenever possible, *** when the minor is removed from his or her own family, to secure for him or her custody, care and discipline as nearly as possible equivalent to that which should be given by his or her parents, and in cases where it should and can properly be done to place the minor in a family home so that he or she may become a member of the family by legal adoption or otherwise." Ill. Rev. Stat. 1991, ch. 37, par. 801—2.

In section 2—28, the Act gives the court power to request a report on the status of the ward:

"The court may require any legal custodian or guardian *** to make a full and accurate report of his or its doings in behalf of the minor. *** Upon the hearing of the report the court may remove the custodian or guardian and appoint another in his stead or restore the minor to the custody of his parents or former guardian or custodian." (Ill. Rev. Stat. 1991, ch. 37, par. 802—28(1).)

It is clear from this language that a report of the guardian is an aid to the court in evaluating custody. When a ward dies, custody is a moot question. The statute cannot be read to allow a post-mortem investigation under the direction of the juvenile court to find out what went wrong, for whatever laudable purpose.

The public guardian argues that the *parens patriae* power of the juvenile court makes clear that "the juvenile court does not function solely in a traditional judicial role." But the *parens patriae* power, which gives the court authority to care for infants and to protect them from neglect, abuse and fraud, is codified in the Juvenile Court Act. (*People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 104 N.E.2d 769.) The *parens patriae* power cannot extend the court's jurisdiction beyond that granted by the Juvenile Court Act.

In his brief the public guardian suggests: "Government malfea-

sance is precisely what is at issue in this case." It is not—the jurisdiction of the juvenile court is the issue in this case. The public guardian goes further and states in his brief: "This court should not permit DCFS to claim executive privilege to avoid the adverse publicity which may result from its malfeasance." Nowhere in the record is there a hint of evidence that DCFS asserts the claim of executive privilege to avoid adverse publicity or conceal malfeasance. If the public guardian has evidence outside the record of malfeasance, then there may be forums, unfettered by questions of jurisdiction, where he will be eagerly welcomed. This court is not one of them.

Because the trial court acted beyond the scope of its authority under the Juvenile Court Act, we conclude that the trial court had no jurisdiction to enter orders compelling a report of the guardian and the production of documents after K.S. died. The juvenile court is not free to expand its statutory authority. (*In re Ardedia L.*, 249 Ill. App. 3d at 40.) We reverse and remand for an order dismissing the action.

Reversed and remanded.

HOFFMAN, P.J., and JOHNSON, J., concur.