FIFTH DIVISION
 November 1, 1996




 No. 1-95-1266


 IN THE
 APPELLATE COURT OF ILLINOIS
 FIRST JUDICIAL DISTRICT


IN THE INTEREST OF: ) Appeal from the 
RAMI COLLINS-MAAT, ) Circuit Court of
 ) Cook County.
a minor )
 )
 ) No. 90 J 13509
 )
ILLINOIS DEPARTMENT OF CHILDREN ) Honorable
AND FAMILY SERVICES, ) Lester Bonaguro,
 ) Judge Presiding.
Appellant. ) 


 JUSTICE HOURIHANE delivered the opinion of the court:
 This case involves an interlocutory appeal by the Department
of Children and Family Services (DCFS) from an order of the
juvenile court which directed DCFS to continue to pay for costly
in-home services provided to a minor and his family subsequent to
family reunification. We are asked to decide whether the circuit
court has the authority under the Juvenile Court Act of 1987
(Juvenile Court Act) (705 ILCS 405/1 et seq. (West 1994)) to
enter orders requiring DCFS to continue paying for services being
provided to a minor and his family after DCFS has been removed as
the custodial party. For the reasons stated below, we vacate
the order of the circuit court and remand this cause for further
proceedings.
 BACKGROUND
 The minor, Rami M., was born on May 26, 1982. Joyce M., the
minor's mother, suffers from a physical disability and has
experienced difficulties controlling Rami's violent behavior. On
July 23, 1990, pursuant to his mother's request, DCFS took
temporary custody of Rami. DCFS thereafter provided services to
Rami and his family and Rami was returned to his family on
September 30, 1991. 
 In early 1993, DCFS sought and was granted temporary custody
of Rami. On August 15, 1993, Joyce filed an emergency motion to
vacate the temporary custody order. Over the next several months
the trial court heard testimony on this issue. 
 On January 25, 1994, the trial court denied Joyce's motion
and Rami remained in the temporary custody of DCFS. Joyce
thereafter filed an emergency motion asking the court to place
Rami with her under an order of protection. On April 7, 1994
the trial court entered an interim order providing that while
Rami was to remain in the temporary custody of DCFS, he should be
returned to his mother's home for an "unsupervised, overnight
visit with his family" which was to continue until further order
of the court. 
 Rami was returned to his mother's home and DCFS continued
providing family preservation services pursuant to a DCFS service
plan. On March 15, 1994, Dr. Bennett Leventhal, a professor of
Psychiatry and Pediatrics at the University of Chicago who had
been ordered by the court to prepare a placement assessment of
Rami, presented his final report to the court. Dr. Leventhal's
report indicated that while in his opinion it was in Rami's best
interest to be returned to the custody of his mother, Rami was
still in the need of extensive treatment. 
 On February 7, 1995, the trial court held an adjudicatory
hearing and the parties entered a stipulation of "no-fault
dependency". A disposition hearing was held later that same day. 
 At that hearing, Charles Dorothy, Rami's DCFS case worker,
testified that Rami was in need of individual and family therapy,
individual attention from a personal care attendant, tutorial
services and anger therapy. Dorothy also stated that he did not
know how long Rami would require these services and said that
there was no "end in sight" for the necessity of a personal care
attendant. Testimony further indicated that the cost of
providing a personal care attendant alone exceeded $100,000 per
year.
 Following the testimony, the trial court noted the unique
circumstances of the case and entered a disposition order which
(1) adjudicated Rami a ward of the court, (2) found that Joyce M.
was fit and willing to care for Rami "with the continued
provision of indicated services", (3) returned Rami to the care
and custody of Joyce M., and (4) placed Rami in the guardianship
of the chief probation officer "only for the purpose of
consenting to necessary medical treatment, including major
medical, in the event mother withholds her consent." At the same
time, the trial court denied the request by DCFS to release it
from the case. DCFS now appeals from the denial of this request.
 DISCUSSION
 I.
 Initially, we note that while normally the scope of review
in an interlocutory appeal is limited to an examination of
whether the trial court abused its discretion in granting or
refusing the requested interlocutory relief, where, as in the
present case, the question presented is one of law, a reviewing
court must determine the propriety of the trial court's judgment
independently. In re Lawrence M., No. 78678 (Ill. August 6,
1996). Additionally, this court may consider substantive issues
in determining whether the trial court acted within its
authority. See Dixon Association for Retarded Citizens v.
Thompson, 91 Ill. 2d 518, 524-25 (1982).
 On appeal, DCFS first argues that the portion of the
juvenile court's disposition order directing the department to
continue providing services to Rami and his family is barred by
the doctrine of sovereign immunity. The doctrine of sovereign
immunity provides that actions against the State must be filed in
the Court of Claims. 745 ILCS 5/1 (West 1994). The determination
of whether a suit is in fact an action against the State turns
upon an analysis of the issues involved and the relief sought
rather than the formal designation of the parties. In re
Lawrence M., No. 78678, slip op. at 2; Senn Park Nursing Center
v. Miller, 104 Ill. 2d 169 (1984). Therefore, while suits that
will potentially subject the State to liability constitute a
claim against the State which must be filed in the Court of
Claims, suits against State officials which merely seek to compel
them to perform their duty are not suits against the State for
purposes of sovereign immunity. In re V.H., 197 Ill. App. 3d 52
(1990).
 We do not find the portions of the order at issue here to be
barred by the doctrine of sovereign immunity. The portions of
the disposition order directing DCFS to continue providing
services to Rami and his family essentially direct DCFS
administrators to provide services. Therefore, even though no
particular administrator within DCFS is named as a party in this
action, the order in question nonetheless compels administrators
to perform their duty and therefore is not a suit against the
State. See In re Lawrence M., In re V.H..
 II.
 DCFS next contends that even if the order of the juvenile
court did not violate the doctrine of sovereign immunity, the
court nonetheless was without subject matter jurisdiction to 
enter an order requiring DCFS to continue paying for services in
this situation. DCFS argues that the juvenile court's subject
matter jurisdiction is limited by the Juvenile Court Act, and
that under that Act the juvenile court is not empowered to order
DCFS to pay for services provided to a minor who is no longer in
its custody. 
 Subject matter jurisdiction refers to the powers of the
court to decide the general question involved in the case, as
well as the power of the court to grant the particular relief
requested. In re M.M., 156 Ill. 2d 53, 64 (1993). When the court
acts beyond that power, its ruling is void. People ex rel. Rice
v. Appellate Court, 48 Ill. 2d 195, 197 (1971). Clearly, the
juvenile court had the power to preside over and enter orders
concerning the disposition of a minor under the circumstances of
this case. See 705 ILCS 405/1 et seq. (West 1994). However, an
examination of the particular relief granted in this case reveals
that it was beyond the juvenile court's authority.
 When our legislature, through statutory enactment, creates
rights and duties which have no counterpart in common law or
equity, the legislature creates a "justiciable matter" which the
courts then have the power to adjudicate. In re M.M., 156 Ill. 2d
53, 65 (1993). In cases where the court is conferred power to
adjudicate by virtue of a statute, the court's jurisdiction is
strictly limited by the statute. In re M.M., 156 Ill. 2d at 66;
See also In re P.F., 265 Ill. App. 3d 1092 (1994); In re Ardedia
L., 249 Ill. App. 3d 35 (1993); In re William Peak, 59 Ill. App.
3d 548 (1978). Juvenile court proceedings have been specifically
identified by our supreme court as proceedings subject to the
limitations of the Juvenile Court Act. In re M.M., 156 Ill. 2d at
66.
 Juvenile court proceedings involving the disposition of a
ward of the court are governed by the Juvenile Court Act of 1987.
The juvenile court's authority to order the disposition of a
minor was created by the legislature and is defined and limited
by the language of the Juvenile Court Act. Because, as discussed
below, we have determined that the Juvenile Court Act and the
Children and Family Services Act (Services Act) (20 ILCS 505/1 et
seq. (West 1994)), do not grant the juvenile court the authority
to order DCFS to pay for services provided to a minor no longer
in DCFS custody, we hold that the juvenile court exceeded its
statutory authority. 
 It is the purpose of the Juvenile Court Act to preserve and
strengthen the minor's family, removing him from his family only
when his welfare, safety or that of the public cannot be
adequately safeguarded. 705 ILCS 405/1-2(1) (West 1994). The
Juvenile Court Act consists of a comprehensive statutory scheme
designed to "determine families in need, reunify families where
appropriate and, if reunification is inappropriate, find other
permanent homes for children." 705 ILCS 405/2-14(a) (West 1994).
 Section 2-23 of the Act governs proceedings at the
disposition phase and specifically provides:
 "(1) The following kinds of orders of disposition
 may be made in respect of wards of the court:
 * * *
 (b) A minor under 18 years of age found to be
 dependant under Section 2-4 may be (1) placed in
 accordance with Section 2-27 or (2) ordered partially
 or completely emancipated in accordance with the
 provisions of the Emancipation of Mature Minors Act.
 * * *
 (3) The court also shall enter any other orders
 necessary to fulfill the service plan, including, but
 not limited to, (i) orders requiring parties to
 cooperate with services, (ii) restraining orders
 controlling the conduct of any party likely to
 frustrate the achievement of the goal, and (iii)
 visiting orders." (emphasis added) 705 ILCS 405/2-
 23(1)(b) & (3) (West 1994).
 Section 2-27 in turn provides that:
 "(1) If the court determines and puts in writing
 the factual basis supporting the determination of
 whether the parents, guardian, or legal custodian of a
 minor adjudicated a ward of the court are unfit or are
 unable, for some reason other than financial
 circumstances alone, to care for, protect, train or
 discipline the minor or are unwilling to do so, and
 that it is in the best interest of the minor to take
 him from the custody of his parents, guardian or
 custodian, the court may at this hearing and at any
 later point:
 (a) place him in the custody of a suitable
 relative or other person as legal custodian or
 guardian;
 (b) place him under the guardianship of a
 probation officer;
 (c) commit him to an agency for care or placement
 ***:
 (d) commit him to the Department of Children and
 Family Services for care and service ***." 705 405/2-
 27(1)(a)-(d) (West 1994).
 In the present case, Rami was adjudicated to be a "no-fault
dependant" under section 2-4(c) of the Juvenile Court Act. 705
ILCS 405/2-4(c) (West 1994). Therefore, under section 2-
23(1)(b), the trial court could have placed Rami in accordance
with section 2-27 or entered an order finding him partially or
completely emancipated. The trial court did in fact enter a
disposition under section 2-27 but, in so doing, the trial court
acted outside the statutory authority granted therein when he
ordered DCFS to continue to pay for services provided to a minor
not in its custody.
 The plain language of section 2-27(1) indicates that the
placement options enumerated therein are available only after the
trial court has found that the minor's parent, custodian or
guardian is unfit or unable to provide for the minor and it is in
the minor's best interests to be removed from their custody. No
such finding was entered in this case. Rather, the trial court
returned custody of Rami to his mother after finding that it was
in his best interests. Clearly, the court may determine that
under section 2-27(1) it is in the best interests of the minor to
remain with the parent, custodian or guardian and enter an order
so directing. However, it seems equally clear that section 2-27
does not grant the court authority to order DCFS to pay for
services provided to a minor not in its custody. The only
mention of services contained in section 2-27 appears in
subsection (1)(d) which provides that, upon finding it necessary
to remove the minor from the custody of his parent, custodian or
guardian, the court may commit the minor to DCFS for "care and
services". 705 ILCS 405/2-27(1)(d). Absent these circumstances,
this section does not confer upon the court the authority to
order DCFS to pay for services rendered to a minor or his family.
 When the language of a statute is plain and unambiguous, the
only role of the courts is in its application. In re M.M., 156
Ill. 2d at 69. We are not vested with the authority to amend or
alter a statute, regardless of any perceived benefit. Here, the
trial court did not deem Rami's mother fit and able to care for
Rami absent the continued provision of extensive in-home
services. This finding in turn necessitated that portion of the
court's order directing DCFS to continue paying for the in-home
services provided to Rami and his family. The unambiguous
language of the statute does not provide for such a disposition. 
This conclusion is further supported by an examination of the
statutes which set out the purpose and duties of DCFS.
 The financial obligations of DCFS for the services which it
refers and provides are discussed in the Children and Family
Services Act. Section 505/1 of that Act contains the following
statement of purpose: 
 "The purpose of this Act is to create a Department
 of Children and Family Services to provide social
 services to children and their families, to operate
 children's institutions, and to provide certain other
 rehabilitative and residential services as enumerated
 in this Act.
 It is the intent of this Act that the child
 welfare services herein provided do not release the
 parent or guardian from responsibility to provide for
 the financial support of their children.
 This primary and continuing responsibility applies
 whether the family unit of parents and children remain
 intact and reside in a common household or whether the
 unit has been temporarily broken by reason of child
 abuse, neglect, dependency or other reasons
 necessitating state care and training.
 It is the purpose of this Act to provide for
 determination for the appropriate level of support,
 from parents given their financial circumstances." 
 (emphasis added) 20 ILCS 505/1 (West 1994).
 This stated intent to hold the parents and guardians financially
responsible for services provided is further addressed by section
505/9.1 of the Act which provides:
 "The parents or guardians of the estates of
 children accepted for care and training under the
 Juvenile Court Act or the Juvenile Court Act of 1987,
 or through voluntary placement agreement with the
 parents or guardians, shall be liable for the payment
 to the Department, or to a licensed or approved child
 care facility designated by the Department of sums
 representing charges for the care and training of those
 children at a rate to be determined by the Department."
 20 ILCS 505/9.1 (West 1994).
 Accordingly, while DCFS may be obligated in certain
instances to provide services to minors and their families, the
underlying obligation to pay for those services remains with the
minor's parent, custodian or guardian. It is within this basic
framework that the remaining sections of the Services Act and
portions of the Juvenile Court Act set out exceptions to this
general rule regarding the financial obligations of DCFS. 
 One situation identified in the Act where DCFS assumes the
underlying obligation for the payment of services occurs when
DCFS has assumed temporary custody of a minor and, pursuant to
section 505/5(m) (20 ILCS 505/5(m) (West 1994)), "[t]he
[Department] shall have the authority, responsibilities and
duties that a legal custodian of the child would have under
subsection (9) of Section 1-3 of the Juvenile Court Act of 1987"
which includes, inter alia, the provision of education and
medical care. 705 ILCS 405/1-3 (West 1994). 
 This duty is mirrored in section 2-10(2) of the Juvenile
Court Act which governs temporary custody hearings and provides,
inter alia:
 "If the minor is ordered placed in a shelter care
 facility of the Department of Children and Family
 Services or a licensed child welfare agency, the court
 shall, upon request of the appropriate Department or
 other agency, appoint the Department of Children and
 Family Services Guardianship Administrator or other
 appropriate agency executive temporary custodian of the
 minor and the court may enter such other orders related
 to the temporary custody as it deems fit and proper,
 including the provision of services to the minor or his
 family to ameliorate the causes contributing to the
 finding of probable cause or to the finding of the
 existence of immediate and urgent necessity." 705 ILCS
 405/2-10(2) (West 1994).
 Our supreme court has recently interpreted this section as
clearly granting the juvenile court the authority to order DCFS
to pay for the ameliorating services provided to a minor and his
family while the minor is in the temporary custody of DCFS. See
In re Lawrence M..
 Similarly, under section 2-27(1)(d) of the Juvenile Court
Act, when a minor is committed to DCFS for care and service and
he is placed in the custody of the Guardianship Administrator,
DCFS is likewise obligated, as the legal custodian under section
1-3 of the Act, to assume the ultimate financial responsibility
for the services provided to the minor. In the present case,
there was no similar authority for the court to impose the
financial responsibility on DCFS for the services provided. 
 The minor and his mother argue that section 2-23(3) of the
Juvenile Court Act does provide the trial court authority to
enter an order requiring DCFS to continue paying for services
provided to a minor returned to the custody of a parent. 
Moreover, they contend that the Juvenile Court Act and the
Children and Family Services Act are to be liberally construed to
meet the goal of reuniting families expressed therein.
 First, the illustrations of orders permitted under section
2-23(3) reveal that this provision was intended to provide the
juvenile court with the authority to enter orders to effectuate
the service plan; not authority to alter the statutory duties
discussed above.
 Second, we find no inconsistency between our interpretation
of the Juvenile Court Act and the statutory mandate therein to
liberally construe the Act to serve the best interests of the
minor. Our decision in this case in no way prohibits the
juvenile court on remand from placing the minor in the custody of
his mother should it find such to be in his best interests. 
Likewise, the court is free on remand to commit the minor to DCFS
who would then be required to provide and pay for necessary
services. The question before the court here is not whether the
juvenile court may seek to provide the minor with the services
and placement which are in his best interests. Rather, the
question before this court is limited to whether, in doing such,
the court has the authority to require DCFS to pay for services
provided to a minor who is no longer in its legal custody. We
find that it does not.
 CONCLUSION
 In this case, the trial court attempted to preserve the
functional arrangement that existed prior to the disposition
hearing when services were paid for by DCFS, and the minor, who
was in the temporary custody of DCFS, was at home with his mother
on an extended "unsupervised overnight visit". While it is clear
that the trial court had the best of intentions and attempted to
serve Rami's best interests, in doing so the court acted outside
its statutory authority. A circuit court may not exceed its
statutory authority no matter how desirable or beneficial the
attempted innovation may be. In re Peak, 59 Ill. App. 3d 548
(1978). 
 For the foregoing reasons, the disposition order of the
juvenile court of Cook County is vacated and this cause is
remanded for proceedings not inconsistent with the opinions
expressed herein. Moreover, DCFS is ordered to continue
providing services to the minor and his family until such time as
the juvenile court on remand enters an appropriate disposition
under the Juvenile Court Act.
 Vacated and Remanded.