*In re* L.W., Alleged to be an Abused Minor (The People of the State of Illinois, Petitioner-Appellant, v. Chad Wheeler *et al.*, Respondents-Appellees).

Fourth District   No. 4—96—0667

Opinion filed August 19, 1997.

COOK, J., dissenting.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

No brief filed for appellees.

Thomas D. Brooks, of Bloomington, guardian *ad litem.*

JUSTICE GARMAN delivered the opinion of the court:
On March 1, 1996, the State filed a petition for adjudication of

wardship in the circuit court of McLean County, alleging that L.W., a male minor born on October 22, 1995, had been physically abused by his parents, respondents Chad Wheeler and Shannon Gibson. It was alleged that respondents had inflicted, or allowed to be inflicted, physical injury to the minor by other than accidental means, in that on February 2, 1996, the minor was diagnosed as suffering from two broken bones and "Shaken Baby Syndrome." It was also alleged that respondents had created a substantial risk of physical injury to the minor by other than accidental means that would be likely to cause death, impairment of emotional health, or loss or impairment of bodily function. 705 ILCS 405/2—3(2)(i), (2)(ii) (West 1994). Pursuant to respondents' stipulation, the trial court found probable cause to believe that the minor was abused and ordered him placed in shelter care.

The adjudicatory hearing began on April 23, 1996. Several witnesses testified. Respondents had told medical personnel and a hospital social worker that a large dog had jumped on L.W. and caused his injuries. The medical testimony indicated the minor had suffered cardiac arrest at his home on February 1, 1996, and was taken to a hospital. He was subsequently transferred to another hospital, where he was treated. He had multiple bruises on his face and trunk, evidence of hemorrhage in the back of his eyes, and he was severely anemic. He had a broken right arm, broken left leg, and extensive hemorrhaging in his brain. The leg fracture was a spiral fracture, which would have required tremendous force to create. L.W. was also found to have rib fractures and lung damage resulting from a contusion to his lungs. The diagnosis was multiple trauma secondary to inflicted injuries. Someone had shaken L.W. in a very violent manner. The broken bones and bruises suggested a blunt force trauma. At that time, L.W. remained in the hospital in a chronic vegetative state with minimal brain activity. He was unable to breathe without a respirator. He was not expected to live. It was the opinion of the testifying physicians that the injuries L.W. suffered could not have been caused by a dog jumping on him.

The adjudicatory hearing was continued to June 25, 1996. When that hearing convened, counsel for respondent mother made an oral motion to dismiss the State's petition for lack of jurisdiction, representing to the court that L.W. died on May 28, 1996. The court required that a written motion be filed and asked all parties to brief the issue. On August 22, 1996, the court entered a written order granting the motion to dismiss, finding that it had lost jurisdiction to continue with the adjudicatory process once L.W. died. The court based its reasoning on the fact that the Juvenile Court Act of 1987

(Act) (705 ILCS 405/1—1 *et seq.* (West 1994)) was enacted to provide shelter and care for minors when their parents or other caregivers are unable or unwilling to do so. The court expressed the opinion that when a respondent minor dies, there is no further reason to continue with the case. The State thereafter filed its notice of appeal. We now reverse and remand.

Neither respondent has filed a brief in this appeal. However, since the record is simple and the issue the State raises is clear, we will address the merits of the case. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976).

■ The State argues the language of section 2—3 of the Act demonstrates that the trial court does not lose jurisdiction over a case even if a minor who is the subject of the proceeding dies prior to adjudication. That section provides in relevant part as follows:

"Neglected or abused minor.

\* \* \*

(2) Those who are abused include any minor under 18 years of age whose parent or immediate family member, or any person responsible for the minor's welfare, or any person who is in the same family or household as the minor, or any individual residing in the same home as the minor, or a paramour of the minor's parent:

(i) inflicts, causes to be inflicted, or allows to be inflicted upon such minor physical injury, by other than accidental means, which causes *death*, disfigurement, impairment of physical or emotional health, or loss or impairment of any bodily function[.]" (Emphasis added.) 705 ILCS 405/2—3(2)(i) (West 1994).

The State has not called to our attention, nor have we found in our independent research, any case that deals with the precise issue before us. The State argues that its interest in the welfare of a child does not cease upon the child's death. In support of its position, it cites *People v. Eveans*, 277 Ill. App. 3d 36, 660 N.E.2d 240 (1996), in which defendant was convicted of the murders of two of her children. There, on appeal, one of the defendant's arguments was that the trial court had erred in admitting testimony of her former husband concerning statements she had made to him during the marriage that she had killed the children. This court noted the statutory marital privilege that prevents a spouse from testifying against another spouse as to any conversation between them during the marriage unless the interests of their children or any children in their care are directly involved. Defendant argued that, since her children were

dead, no interest of theirs was involved in the case. We rejected that argument, stating that when a child is murdered by a parent, the State stands in the shoes of the deceased child to serve several continuing interests, such as (1) seeing the murderer brought to justice, (2) protecting other children from violent acts by the same defendant, and (3) deterring similar behavior in other potentially abusive parents. We noted the State has a compelling interest in child welfare and that the child-interest exception to the marital privilege should be construed broadly in order to afford the greatest protection possible to children, rather than to the murderous or abusive spouse. *Eveans*, 277 Ill. App. 3d at 44-45, 660 N.E.2d at 246-47.

In *In re K.S.*, 264 Ill. App. 3d 963, 637 N.E.2d 1163 (1994), in which a minor died while in foster care, the public guardian filed a motion to compel the Department of Children and Family Services (DCFS) to file a report concerning the death. The trial court granted the motion. DCFS filed a motion for nondisclosure of a certain report the court had required that it disclose, claiming privilege. The court denied the motion and DCFS appealed. The appellate court addressed the issue as one of jurisdiction of the juvenile court to enter any order concerning a ward of the court after the ward died. The court noted that the circuit courts have jurisdiction over all justiciable matters and that the legislature has no authority to limit the jurisdiction of the courts over matters that existed at common law. However, where the legislature passes a law that creates a new justiciable matter, which did not exist at common law, the statute itself defines the limits of the court's jurisdiction. The appellate court concluded that the juvenile court loses jurisdiction over matters concerning a ward when the ward dies. It found nothing in the statute that gave the court any authority to participate in the investigation of a ward's death. *K.S.*, 264 Ill. App. 3d at 966-67, 637 N.E.2d at 1165-66.

Other cases have also held a lack of jurisdiction where actions taken by the circuit court were not specifically authorized by the Act. See *In re M.M.*, 156 Ill. 2d 53, 69, 619 N.E.2d 702, 711-12 (1993) (Act did not make provision for circuit court to limit or restrict power of guardian appointed to consent to adoption of minor); *In re Ardedia L.*, 249 Ill. App. 3d 35, 40-41, 618 N.E.2d 804, 807-08 (1993) (Act did not authorize circuit court to order DCFS to provide services to ward after her twenty-first birthday); *In re Chiara C.*, 279 Ill. App. 3d 761, 768, 665 N.E.2d 404, 409 (1996) (circuit court lacked jurisdiction to order DCFS to place minor in a specific residential facility, since the Act did not authorize the court to order specific services).

■ These cases, however, do not control the disposition of the instant case. The wording of section 2—3 of the Act includes a deceased child in the definition of abused minor, provided the child's death was caused by physical injury inflicted by one of the classes of persons described in that section. The circuit court is thus authorized to determine whether that deceased child was an abused minor. Accordingly, there is no jurisdictional bar to continuing an abuse case after a child's death. At first blush, it may seem an exercise in futility to continue with an adjudicatory proceeding in the face of the minor's death. After all, the minor cannot be declared a ward of the court, cannot be protected from abusive family members, and cannot be reunited with his or her family. Nonetheless, these are not the only purposes that may be served by continuing with the adjudication. The Act seeks to protect not only children who are the direct victims of neglect or abuse, but also those who potentially may be subject to neglect or abuse because they reside, or may in the future reside, with a person who has been found to have neglected or abused another child. It is well established:

> "When faced with evidence of prior abuse by parents, the juvenile court should not be forced to refrain from taking action until each particular child suffers an injury. *** '[A parent] does not have the privilege of inflicting brutal treatment upon each of his children in succession before they may individually obtain the protection of the [S]tate.' " *In re Brooks*, 63 Ill. App. 3d 328, 339, 379 N.E.2d 872, 881 (1978), quoting *In re Miller*, 40 Wash. 2d 319, 323, 242 P.2d 1016, 1018 (1952).

This is the concept of the "injurious environment" recognized by the Act. 705 ILCS 405/2—3(1)(b) (West 1994). Under this concept, evidence that a parent has neglected or abused one child is relevant in determining whether another child may be at risk for abuse or neglect. See *In re A.D.W.*, 278 Ill. App. 3d 476, 482, 663 N.E.2d 58, 62 (1996); *In re M.K.*, 271 Ill. App. 3d 820, 827, 649 N.E.2d 74, 79 (1995); *In re Z.R.*, 274 Ill. App. 3d 422, 427, 654 N.E.2d 255, 259 (1995). This holds true even if the neglect or abuse took place at some time in the past with other children. See *In re Harpman*, 146 Ill. App. 3d 504, 514, 496 N.E.2d 1242, 1248 (1986); *M.K.*, 271 Ill. App. 3d at 827, 649 N.E.2d at 79.

We therefore conclude that the plain language of the Act, as well as the broad purposes to be served by juvenile proceedings in general, authorizes the court to continue with the adjudicatory process when the minor who is the subject of the proceeding dies. The court does not lose jurisdiction in such cases. Any other finding would lead to the peculiar situation in which respondents could be found to have

physically abused their child had he survived the alleged abuse, but not if he died from its effects. Such a result is unacceptable and contrary to the intent of the legislature. However, there is nothing in the Act that requires the court to continue with the adjudicatory process once a child alleged to be abused dies. It is within the trial court's sound discretion to determine whether further proceedings will serve the goals sought to be achieved by the Act. In this regard, the trial court is in the best position to balance the interests involved.

Accordingly, the circuit court's order granting respondent mother's motion to dismiss is reversed and the cause remanded.

Reversed and remanded.

STEIGMANN, P.J., concurs.

JUSTICE COOK, dissenting:

I respectfully dissent and would affirm the decision of the trial court dismissing the petition.

When the State files a petition for adjudication of wardship on the basis that a child has been abused, the death of the child does not deprive the court of jurisdiction to proceed. If other children are involved, the court may continue with the case, and proof that the deceased child was abused, neglected, or dependent may be the basis for a finding that the other children are abused, neglected, or dependent. See *In re K.G.*, 288 Ill. App. 3d 728 (1997). However, where the court will no longer be called upon to order any relief under the Act, I disagree that the case may continue solely for the entry of a declaratory judgment that the parents are child abusers.

The majority opinion suggests (291 Ill. App. 3d at 623) that the case may continue for the protection of "those who potentially may be subject to neglect or abuse because they reside, or may in the future reside, with a person who has been found to have neglected or abused another child." If one examines, however, each of the potential adjudicatory or dispositional orders that a juvenile court is empowered to enter, they all make reference to or implicitly require the existence of a living child. See 705 ILCS 405/2—20, 2—21, 2—23 (West 1994).

Even in cases that may be filed under the declaratory judgment provision of the Code of Civil Procedure (735 ILCS 5/2—701 (West 1994)), there must be a showing that the underlying facts and issues of the case are not moot or premature so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. *Underground*

*Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 375, 362 N.E.2d 298, 300 (1977). Among the reasons why courts do not rule on moot questions are (1) the courts are already too busy with real cases, and (2) the decision of a moot question is suspect because the parties do not have the incentive to litigate it that they have to litigate actual controversies. Respondents' lack of incentive is shown by their failure to appear in this court. The State argued in the trial court that this case was not moot because of the public interest involved in the ongoing case. There is a "public interest exception" to the mootness doctrine, but much more is required for its application than that the public is interested in the case. See *Lucas v. Lakin*, 175 Ill. 2d 166, 170, 676 N.E.2d 637, 639 (1997).

The State offers no reason why this case should not be dismissed except to say that "the State may stand in the place of the deceased child to vindicate his interest in seeing that his abuser is brought to justice." In particular, there is no suggestion that other children are involved, either in this petition or similar petitions. Continuing with this proceeding as a substitute for a criminal proceeding, or in order to obtain discovery in connection with a criminal proceeding, would be improper.

I agree with the trial court there is no jurisdiction for the entry of a purely declaratory judgment in a juvenile case. I do not read the trial court's decision to say that an abuse case must terminate on the death of the child even when there is some purpose for further proceedings. We should accept the trial court's determination that there is no further purpose for proceeding with this case. Even if we assume the trial court did not make that determination, we may affirm for any reason supported by the record, even one rejected by the trial court. *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 347-48, 662 N.E.2d 397, 409 (1996). The record shows no reason why this litigation should continue, and in the absence of such a showing the case should be dismissed.